Mercer County Circuit Court.

NATIONAL RADIATOR COMPANY, PLAINTIFF, v. PENNSYL-
VANIA RAILROAD COMPANY, DEFENDANT.

Decided June 21, 1928.

For the plaintiff, *Hutchinson & Hutchinson.*

For the defendant, *Theodore Strong.*

Donges, J. A jury having been waived, this case is be-
fore me on stipulated facts.

Between October 2d, 1920, and June 21st, 1921, plaintiff
shipped over the railroad of defendant, sand originating at
Vineland and South Vineland, New Jersey, and destined to
Trenton, New Jersey. Defendant is a common carrier. For
the service, plaintiff paid to defendant at the rate of nine (9)
cents per hundred pounds, plus United States revenue thereon.
This rate was in accordance with the existing tariffs for ship-
ment of such commodity at the times of such shipments. This
rate was put into effect on August 26th, 1920, after hearing
by the interstate commerce commission as to interstate rates,
and after the filing of a report by the New Jersey public utility
commission, on August 18th, 1920, suggesting that such

rates be filed, but recommending that they not apply "to intrastate shipments of sand, gravel and broken stone to be used for road building and repair, unless it appears more clearly than at present that this would be just and reasonable." Between June 25th, 1918, and August 26th, 1920, the rate on sand moving between Vineland or South Vineland and Trenton was six and one-half cents per one hundred pounds, under authority of General Order No. 28, issued by the director general of railroads. The carriers declined to adopt the board's recommendation to carry materials for road building and repair at a lower rate, and asked for a hearing, and the public utility commission, on May 25th, 1921, found the rate of nine cents per hundred pounds "unjust, unreasonable and unduly discriminatory." Thereupon, this defendant, on July 1st, 1921, filed tariffs in accordance with such conclusion of the public utility commission, carrying a rate of seven and one-half cents per hundred pounds for sand, irrespective of the use to be made thereof.

In its report of May 25th, 1921, made part of the stipulation in this case, the utility commission said: "The shippers seek in these proceedings not only to have declared the proposed tariff to be unjust and unreasonable, but also seek to have the rate imposed under General Order No. 28 declared to be unjust and unreasonable. We recognize the force of this suggestion, but the matter of making any adjustment of the charges collected by the carrier under General Order No. 28 is impossible; that increase was permitted to become and has been in effect, and was not challenged nor attacked before this board prior to its becoming effective under the law. While, therefore, the board cannot adjust charges made under General Order No. 28 if they appear to be excessive, it can consider such excess in conjunction with its consideration of the justness and reasonableness of the proposed rates."

The board found that the rates charged for the shipment of sand "are unjust, unreasonable and unduly discriminatory."

It also said: "We conclude that the imposition of fifteen per cent. upon the rates existing and charged by the railroads prior to the increase authorized by the interstate commerce commission in *ex parte* 74 would be just and reasonable. The

imposition of this percentage will remedy the discrimination caused by General Order No. 28 as between these commodities and all other commodities affected by that order, and will also bring the New Jersey rates into appropriate alignment with the rates on these commodities in adjoining states."

This suit is brought to recover one and one-half cents for each one hundred pounds of sand shipped by plaintiff over defendant's road between October 2d, 1920, and June 21st, 1921, when it paid the rate of nine cents per hundred pounds. This claim represents the difference between the then existing nine cent rate and the seven and one-half cent rate established by the tariffs filed on July 1st, 1921, in accordance with the public utility commission's report of May 25th, 1921.

The complaint alleges that plaintiff paid nine cents per hundred pounds; that the board of public utility commissioners found, on May 25th, 1921, that such rate was unjust, unreasonable and unduly discriminatory, and that the imposition of fifteen per cent. upon the rate existing prior to the nine cent rate (namely, six cents) would be just and reasonable. Tariffs were filed carrying a rate of seven and one-half cents per hundred pounds.

Plaintiff alleges that the defendant refunded or paid back to certain other shippers of sand the difference of one and one-half cents per hundred pounds, plus tax thereon, between the rate of nine cents per hundred pounds plus tax thereon, and seven and one-half cents per hundred pounds plus tax thereon.

In the stipulation, it appears that between October 2d, 1920, and June 21st, 1921, defendant transported over its line of railroad between stations in the State of New Jersey, sand of similar quality for E. Riley Mixner and to T. J. Wasser, state highway engineer, and others, and collected at the rate of nine cents per hundred pounds, and that "subsequent to the finding by the board of public utility commissioners on May 25th, 1921, defendant refunded to E. Riley Mixner and to T. J. Wasser, the New Jersey state highway engineer, the difference between the nine cent rate and the seven and one-half cent rate, or one and one-half cents per one hundred pounds, on all shipments of sand made by or for

them for road building or road repair between the period extending from August 26th, 1920, to June 21st, 1921, the payments amounting with interest to $786.98 in the case of E. Riley Mixner, and $906.51 in the case of T. J. Wasser;" "that defendants made no refunds except on shipments for road building or road repair, and that the shipments involved herein were not for road building or road repair," that plaintiff made claim for a refund of one and one-half cents per hundred pounds on shipments between the dates of the refund to others, and defendant refused to pay same.

This case presents two questions, namely, (1) were the refunds to Mixner and Wasser unduly preferential and unjustly discriminatory as against the plaintiff? (2) If they were, can plaintiff recover its payments in excess of the rates charged others for like service?

Plaintiff does not seek to have the rates imposed by defendant declared to be unjust and unreasonable, nor does it sue for reparation. The statute confers no power upon the board of public utility commissioners to award reparation. It may declare an existing rate to be unjust, unreasonable, insufficient or unjustly discriminatory, or unduly preferential, and fix just and reasonable rates. *Pamph. L.* 1911, *p.* 376, *subdiv. C,* § 16.

Subdivisions A, B, C and D (section 18 of said act) prohibit the making of any unjust or unreasonable rate, classification or practice, or the making or giving "directly or indirectly any undue or unreasonable preference or advantage to any person or corporation, or to any locality, or to any particular description of traffic in any respect whatsoever, or subject any particular person or corporation, or locality, or any particular description of traffic, to any prejudice or disadvantage, in any respect whatsoever."

These provisions of the act of 1911 are only declaratory of the common law. The doctrine that all shippers shall be treated alike was enacted into English law in 1854 by 17 and 18 *Vict., ch.* 31, and by our state in the act of 1911 above referred to. The courts of this state have followed the common law in a number of cases. *McGregor* v. *Erie Railroad Co.,* 35 *N. J. L.* 89; *Messenger* v. *Pennsylvania Railroad Co.;*

37 *Id.* 531; *Atwater* v. *Delaware, Lackawanna and Western Railroad Co.,* 48 *Id.* 55.

In the instant case, defendant had filed tariffs for the carriage of the commodities in question, and such tariffs made no change in rate for carriage of such commodities if used for a particular purpose.

The statute (section 18, *supra*) is explicit in requiring equal and exact treatment of all shippers. In the Messenger case, the duty was thus defined:

"A common carrier owes an equal duty to all, and it cannot be discharged if he is allowed to make unequal preferences and thereby prevent or impair the enjoyment of the common right."

Mr. Justice Bedle, in that case, said:

"A want of uniformity in price for the same kind of service under like circumstances is most unreasonable and unjust, when the right to demand it is common. It would be strange if, when the object of the employment is the public benefit, and the law allows no discrimination as to individual customers, but requires all to be accommodated alike as individuals, and for a reasonable rate, that by the indirect means of unequal prices some could lawfully get the advantage of the accommodations and others not."

As above stated, the tariffs of defendant made no change in the rates for carriage of the commodities in question, based upon the use to be made of such commodities. The fixing of rates, for interstate carriage, dependent upon the ownership of the goods tendered was held invalid by the United States Supreme Court in the *Interstate Commerce Commission* v. *Delaware, Lackawanna and Western Railroad Co.,* 220 *U. S.* 235. The same court held in *Interstate Commerce Commission* v. *Baltimore and Ohio Railroad Co.,* 225 *Id.* 326, that a difference in intended use of coal did not justify a difference in rate. In that case (at *p.* 342), Mr. Justice McKenna said:

"It is admitted that the fact that a railroad is the shipper or consumer is not a circumstance or condition that affects the carriage, nor can the different uses to which the coal may be put; and it would seem necessary that any other extraneous condition or circumstance could have no greater potency.

Once depart from the clear directness of what relates to the carriage only, and we may let in considerations which may become a cover for preferences. May a carrier look beyond the service it is called upon to render to the attitude and interest of the shippers before, or their attitude or interest after, transportation? It must be kept in mind that it is not the relation of one railroad to another with which we have any concern, but the relation of a railroad to its patrons, who are entitled to equality of charges."

From the stipulation of facts and from defendant's brief, it appears that defendant did not acquiesce in the exception that the rates proposed by the order of the public utility commissioners, dated August 17th, 1920, should not apply to the carriage of the commodities in question for road building or road repair, and upon application of the carriers, a hearing was held, which resulted in an order fixing rates for such carriage, without the exception noted. It appears from the stipulated facts, therefore, that defendant was never required either by its tariffs or by order of any authority to carry sand, gravel or broken stone at a lower rate than fixed by its filed tariffs for any consignor or consignee. So far as appears in the stipulation of facts, its rebate or drawback to Mixner and Wasser was entirely voluntary.

The stipulated facts disclose that the service to plaintiff, and to Mixner and Wasser, was for the carriage of "sand of similar quality" * * * "over its line of railroad in the State of New Jersey and between its stations in the State of New Jersey." Hence, it must be concluded that the service rendered to plaintiff and that rendered to Wasser and Mixner were under like circumstances.

It appears, therefore, that the defendant charged nine cents per hundred pounds for the carriage of plaintiff's sand, and charged seven and one-half cents per hundred pounds to others for similar service. The charge to Mixner and Wasser was not the lawful rate. The rebate resulted in the giving of an undue preference and was an unjust discrimination against plaintiff, and was in violation of law.

At common law the courts had jurisdiction over the subject-matter. The passing of rate-regulating statutes which

furnish no remedy to shippers for discrimination in rates do not take away the shipper's common law right of action for damages for such discrimination. As above stated, plaintiff is not seeking reparation. It is not attacking the reasonableness of the rate. It asserts the right to be put in the same position as to payment for like service as other favored shippers.

In the case of *Great Western Railway Co.* v. *Sutton* (*L. R.*), 4 *H. L.* 226, cited in *Interstate Commerce Commission* v. *Baltimore and Ohio Railroad Co.,* 145 *U. S.* 277, and in *Scofield* v. *Lake Shore and M. S. Railway Co.,* 43 *Ohio St.* 615; 3 *N. E. Rep.* 927; it was said:

"When it is sought to show that the charge is extortionate as being contrary to the statutable obligation to charge equally, it is immaterial whether the charge is reasonable or not; it is enough to show that the company carried for some other person, or class of persons, at a lower charge during the period throughout which the party complaining was charged more, under the like circumstances."

I can find no case in this state dealing with the question of the measure of damage recoverable in a case like this one. Unlike the acts of congress, which declare the measure of damages recoverable, our statutes merely prohibit the giving of preferences. The recovery must be in accord with the common law.

The doctrine of the common law as well as the provisions of our statute against undue preferences are for the benefit of the shipper. The law requires that there shall be equality between shippers. How may this equality be maintained if a less favored shipper has no remedy to put him in the same position as the favored shipper?

While all authorities agree that discrimination in rates for like service is unlawful, there is a conflict as to the measure of damages in such cases. According to one line of decisions, the damage is to be measured by actual loss. *Pennsylvania Railroad Co.* v. *International Coal Co.,* 230 *U. S.* 184.

This decision rests, however, upon the peculiar terms of the act of congress. As the bill passed the senate on May 12th, 1886, section 2 provided that the carrier should be liable

for the difference between the rate charged and the lowest rate charged for like service. This was changed before passage by both houses, and accounts for the adoption of another measure of damages.

Likewise, *Hoover* v. *Pennsylvania Railroad Co.*, 156 *Pa. St.* 220; 27 *Atl. Rep.* 282, was based upon a finding that the services involved not being similar, there was no unjust discrimination.

By the other line of decisions, it is held that the measure of damages is the difference between the charges paid by plaintiff and those exacted from the more favored shipper.

Such a case is *Union Pacific Railway Co.*, 149 *U. S.* 682, in which this measure of damages was sustained under the Colorado statute, which required all persons to be treated alike.

Likewise, in *Cook et al.* v. *Chicago, R. I. and P. Railway Co.*, 81 *Iowa* 551; 46 *N. W. Rep.* 1080.

This question was fully discussed in a very enlightening opinion of the Minnesota Supreme Court, in *Sullivan* v. *Minneapolis and R. R. Railway Co.*, 142 *N. W. Rep.* 3, in which the authorities are reviewed. In that case it was held:

"In such an action, whether based upon the common law or the statutory duty not to discriminate in rates, the shipper may recover the difference between the charges exacted of him and those accepted from the most favored shipper."

As was said by Mr. Justice Philip E. Brown, in that case:

"As soon, therefore, as the duty of equality is established, by reference either to the common law or to statute, the general damages incident to a violation thereof obviously include the difference between the charges involved in the discrimination, whether, as in the English case cited, they be viewed as flowing from extortionate or excessive charges, or, as in our conception thereof, they be deemed as purely compensatory, by way of restoration of equality. The wrong complained of being unlawful discrimination, the damages inevitably incident thereto must include the difference between the amount paid by the shipper from whom the full rate is exacted and that accepted from the more favored one. Any other conclusion would, in many cases, deprive the

shipper of the benefit of the rule of equality, and we would have the resultant anomaly of the invasion of a right coupled with the denial of a remedy."

This conclusion seems to me to be supported by both reason and authority.

Finally, defendant urges that the payment to defendant was voluntary and therefore not recoverable.

I am unable to reach this conclusion.

When plaintiff made the payment, it was not aware that defendant was giving, or intended to give, a lower rate, by draw-back or refund, to any other shipper. It had a right to assume the carrier would charge all shippers in accordance with its filed rates. It obtained knowledge after the date when the last shipment involved in this suit was made. It did not make payment with full knowledge of all the facts.

Even if plaintiff had knowledge of the refunds to Wasser and Mixner, under authority of *McGregor* v. *Erie Railway Co.*, 35 *N. J. L.* 89, and *Cook et al.* v. *Chicago, R. I. and P. Railway Co., supra,* plaintiff would not be barred from recovery, having made protest by demanding equality, upon learning of the facts.

I find, therefore, that the refund to Mixner and Wasser, and defendant's refusal to treat plaintiff in like manner as to charges for like service, created and constituted an unjustly discriminatory and unduly preferential rate and charge, and subjected plaintiff to prejudice and disadvantage, and was contrary to law, and that plaintiff is entitled to have from defendant the excess of such charges, being one and one-half cents for each hundred pounds shipped to it, as set forth in the agreed state of facts, amounting to the sum of $1,044.11, with interest thereon.