FEDERAL GRAVEL CO. *v.* DETROIT & MACKINAC RAILWAY CO.

1. ASSIGNMENTS—RIGHTS ASSIGNABLE—TORT ACTIONS.
   As general rule, right of action for tort is not subject of assignment, but said rule applies only to those torts which are merely personal, and which, on death of person wronged, die with him, and therefore rights of action in tort for injury to one's property or estate are assignable.

2. SAME—CARRIERS—RIGHT OF ACTION FOR UNJUST DISCRIMINATION—INJURY TO PROPERTY.
   Where railroad company's unjust discrimination in freight rates against gravel company was direct cause of forcing it to sell its property at loss to satisfy its creditors, cause of action arising out of said tort was injury to its property or estate, and therefore was assignable.

3. CORPORATIONS—REORGANIZATION—EQUITY—RIGHT OF ACTION FOR INJURY TO PROPERTY—ASSIGNMENTS.

Corporation which in effect came into existence incident to reorganization of its predecessor should be held in equity to be reorganization of and successor to its predecessor, with right to maintain action for injury to its property, although not expressly assigned.

4. EQUITY—PLEADING—FAILURE TO DENY ALLEGATION—ADMISSION—COURT RULES.

Where allegation in amended bill of complaint that plaintiff corporation is successor to and owner of all rights belonging to its predecessor was neither admitted nor denied by defendants, it stood as admission (Circuit Court Rule No. 25, § 2 [1916]).

5. SAME—DENIAL OF MOTION TO AMEND ANSWER—FURTHERANCE OF JUSTICE.

Denial of defendant's motion for leave to amend its pleading denying allegation in plaintiff's bill that it was successor to and owner of all rights of its predecessor, including right to recover for injury to its property, on ground that motion came too late, *held*, not abuse of discretion, where not made until close of proofs; it being assumed that trial judge was convinced that granting said motion was not for furtherance of justice (3 Comp. Laws 1929, § 14144).

6. INTERVENTION—PARTIES—EQUITY.

Parties who, after commencement of suit, had become interested in substantial way in subject-matter and issues involved, were properly permitted to join therein as parties plaintiff; they having elected to adopt plaintiff's bill of complaint and prayer for relief therein contained (3 Comp. Laws 1929, §§ 14018, 14021).

7. CARRIERS—UNFAIR COMPETITION—REBATING—STATUTES.

Where, in suit by gravel company to enjoin railroad company and another from engaging in unfair competition and to recover damages sustained, it appears that railroad company organized gravel company and furnished it gravel for nominal consideration, it was guilty of indirectly rebating on freight rates, rendering it liable for resultant damages (2 Comp. Laws 1929, §§ 11032, 11036).

8. SAME—DAMAGES.

On appeal from decree in favor of gravel company against railroad company for damages resulting from unjust discrimination, decree for $155,000 is reduced to $60,000, as just amount of damages disclosed by record.

9. SAME—MEASURE OF DAMAGES.

Where, through unjust discrimination and indirect rebating to competitor, plaintiff gravel company was unable to continue in business and was forced to sell its property at loss to satisfy its creditors, for which loss railroad company was liable, measure of damage was properly held to be difference between true value of said property and amount for which it was sold.

10. SAME—PROXIMATE CAUSE—UNJUST DISCRIMINATION.

In said suit, holding of trial judge that proximate cause of plaintiff's failure in business was unjust discrimination by defendant railroad company against plaintiff, as charged in its bill of complaint, *held*, justified by record.

11. EQUITY—SALE OF PROPERTY DAMAGED—ADEQUATE REMEDY AT LAW.

Although, pending suit by gravel company against railroad company for injunction and recovery of damages for unjust discrimination, plaintiff sold its property, *held*, that it should not be denied equitable relief and relegated to its action at law for damages, under peculiar circumstances of instant case.

12. INTERVENTION—EQUITY—PLEADING.

Where interveners adopted as their pleading bill of complaint already filed, so that after intervention was permitted issues were in no way changed, and relief sought was same as before, circuit judge was justified in permitting intervention and in holding that court still had power to make equitable disposition of questions presented by original bill of complaint.

13. CHAMPERTY AND MAINTENANCE—CLEAN HANDS—EQUITY.

Contentions of defendants touching matter of champerty and maintenance and that plaintiff is not in court with clean hands *held*, without merit under record.

14. CARRIERS — UNJUST DISCRIMINATION — CORPORATIONS — ULTRA VIRES—PARTIES—STATUTES.

Where gravel company's suit for relief against railroad company for unjust discrimination is based on alleged violations of statute, which expressly authorizes relief sought, defendants' claim that instant suit is based on alleged *ultra vires* acts of defendant railroad company, and therefore State is only proper party plaintiff, is without merit (2 Comp. Laws 1929, §§ 11032, 11036).

15. SAME—UNJUST DISCRIMINATION—REBATING—CORPORATIONS.

Where railroad company incorporated and operated gravel company, to which it sold gravel at less than cost, resulting in

unjust discrimination against competitor, railroad company
may not deny separate corporate entity of company which it
organized, in suit for damages for said unjust discrimination,
and claim that it was in fact operating its own gravel pit and
transporting and selling its own product.

16. PLEADINGS—AMENDMENTS—LIMITATION OF ACTIONS—DISCRETION
OF COURT.

Granting or denying defendants' motion to amend answer by
adding thereto defense that plaintiff's claim against railroad
company for unjust discrimination was barred by statute of
limitations, *held*, under circumstances, largely within discre-
tion of trial judge, and its denial is not disturbed on appeal.

17. CARRIERS—UNJUST DISCRIMINATION—REBATING.

In gravel company's suit against railroad company for unjust
discrimination, railroad company's contention that it oper-
ated gravel pit primarily to obtain ballast for use on its
roadbed, and that sale of commercial gravel as a by-product
was merely incidental, *held*, not sustained by record.

18. SAME—VIOLATION OF STATUTE—DAMAGES—INJUNCTION.

Where railroad company, by organizing subsidiary gravel com-
pany, engaged in production and sale of commercial gravel in
competition with plaintiff, and, by selling gravel at less than
cost, subjected plaintiff to unjust discrimination, railroad com-
pany violated statute, rendering it liable for damages, and
entitling plaintiff to injunctive relief (2 Comp. Laws 1929,
§§ 11032–11035, 11063).

19. DAMAGES—DOUBLE DAMAGES—EQUITY—CARRIERS—STATUTES.

Notwithstanding statute authorizes double damages against
railroad company for unjust discrimination, equity court will
not, under all circumstances, decree double damages (2 Comp.
Laws 1929, § 11035).

20. CARRIERS — REBATING — DAMAGES — DOUBLE DAMAGES — GOOD
FAITH—INTEREST—STATUTES.

Where, in suit against railroad company for unjust discrimina-
tion against gravel company, it appears that railroad company
consulted State authorities and followed suggestion made by
them as to how business should be carried on, and it is
inferable therefrom that railroad company believed that in
operating gravel business through subsidiary company it was
within its legal rights, double damages should not be decreed,
although authorized by statute, nor should interest be allowed
until after decree in this court (2 Comp. Laws 1929, § 11035).
FEAD and WIEST, JJ., dissenting.

Appeal from Bay; Houghton (Samuel G.), J. Submitted October 6, 1932. (Docket No. 38, Calendar No. 36,711.) Decided June 5, 1933.

Bill by Federal Gravel Company, a Michigan corporation, against Detroit & Mackinac Railway Company and another to enjoin discrimination in freight rates and for other relief. Michigan Gravel Company, a copartnership, intervened as plaintiff. From decree rendered, all parties appeal. Modified.

*Harry C. Howard,* for plaintiffs.

*Carl R. Henry* and *H. R. Martin,* for defendants.

NORTH, J. By this bill in equity plaintiffs seek injunctive relief and damages alleged to have been sustained in consequence of the defendant common carrier rebating and discriminating in favor of the other defendant. We formerly reviewed and denied defendants' motion to dismiss on the ground that the bill of complaint did not state a cause of action. *Federal Gravel Co.* v. *Railway Co.,* 248 Mich. 49. The facts alleged in the bill and the relief sought are quite fully stated in the reported case. Defendants' answer, while admitting many allegations of the bill, denies others, and denies that the relief prayed should be granted. Upon hearing in the circuit court plaintiffs were decreed injunctive relief and $155,000 damages awarded to the Federal Gravel Company. Defendants have appealed.

Thirty-five grounds of appeal are stated. We will not attempt to review them in detail. Among them are the following:

(1) "The court erred in not granting defendants' motion, made at the close of the proofs, to dismiss the bill of complaint, including the intervening peti-

tion  *  *  *  (because) it now conclusively appears, from the proofs, that said plaintiff has, since the pendency of the suit, conveyed to other parties, Sensibar and Dull, interveners, all its interest in the Greenbush and Emerson gravel pits, in connection with which injunctive relief is sought; it also conclusively appears that the claim for the alleged damages arose during the operation of those pits by the Federal Sand & Gravel Company, during the years 1922, 1923, and 1924.    There has been offered in evidence no assignment of such claim by the Federal Sand & Gravel Company to the Federal Gravel Company, the plaintiff.    It conclusively appears that neither of those pits has been operated by the plaintiff, since its organization.    Therefore, plaintiff cannot recover in this suit for any such alleged damages.

(2) " * * *  Even if there was evidence of an attempted assignment  *  *  *  of such claim for alleged damages,  *  *  *  (it) involves a right of action for tort, which is not assignable in this State.''

Considering first the latter part of the above quoted reasons in support of this appeal, the record conclusively discloses that the alleged tort out of which this cause of action arose was one resulting in an injury to the property or estate of the plaintiffs or the plaintiffs' alleged assignor.    The cause of action, if any, was therefore assignable.

''A distinction is observed between those causes of action for wrongs which affect the person strictly and all others, and accordingly all rights of action in tort for injury to one's property or estate are assignable.''    5 C. J. p. 889, citing Perkett v. Railroad Co., 175 Mich. 253; Holmes v. Loud, 149 Mich. 410.

''As a general rule, the right of action for a tort is not the subject of assignment.    But the rule applies only to those torts which are merely personal,

and which, on the death of the person wronged, die with him." *Final* v. *Backus* (syllabus), 18 Mich. 218.

But it is urged by appellants that even if the cause of action is assignable, there is no competent proof of its having been assigned by the Federal Sand & Gravel Company to plaintiff, the Federal Gravel Company. Each of these companies was a corporation organized under the laws of Michigan. While it may not be literally and technically true, from an equitable standpoint we are much impressed with the contention of the Federal Gravel Company that it in effect came into existence incident to the reorganization of its predecessor; and in this litigation we think the Federal Gravel Company should be held in equity to be a reorganization of and the successor to the Federal Sand & Gravel Company. Further, at the very outset of its amended bill of complaint, filed February 28, 1928, plaintiff alleged that it was a "successor to and the owner of all the rights belonging to the Federal Sand & Gravel Company, a Michigan corporation, of which corporation the Federal Gravel Company is a reorganization." This allegation of plaintiffs' bill of complaint was neither admitted nor denied by defendants; and therefore it stood as an admission. See Circuit Court Rule No. 25, § 2 (1916). Such was the holding of the circuit judge, and he denied defendants' motion, made at the close of the proofs, to amend its pleadings in the above-noted particular. Denial was based on the ground that it "came too late." It is only fair to assume that the trial judge was convinced that granting defendants' motion to amend was not "for the furtherance of justice." 3 Comp. Laws 1929, § 14144. Under all the circumstances presented by this record, we are not disposed to hold that the

ruling made by the circuit judge was an abuse of the discretion with which he was vested.

The following facts are pertinent to other reasons assigned in support of defendants' appeal: After the former hearing of this case in this court, and on July 11, 1929, the Federal Gravel Company for a consideration of $45,000 sold, assigned, and transferred all of its "tangible assets" to the Michigan Gravel Company, a copartnership composed of Messrs. Sensibar and Dull; but this sale did not include "the claim involved in this suit." Because of this circumstance, defendants assert that plaintiff corporation (having disposed of all of its interest in the property) is not entitled to injunctive relief, and that its claim for damages should be transferred to and adjudicated on the law side of the court. And further, so far as the Michigan Gravel Company is concerned, it had no interest in the property at the time of the alleged wrongdoing of which complaint is made, and therefore is not entitled to any relief in this cause; and if it has any equitable cause of action it should be presented by a new and independent bill of complaint. To meet this situation, upon its petition so to do, the Michigan Gravel Company was permitted during the course of the hearing in circuit court to intervene as a party plaintiff, "they having elected to adopt plaintiff's bill of complaint with benefit of the prayer for relief by way of injunction against the defendants as therein contained." We think the defendants have no just cause to complain of the order of the circuit judge whereby a party, who in the meantime in a substantial way had become interested in the subject-matter and the issues involved in this suit, was permitted upon its application to be joined therein. See 3 Comp. Laws 1929, §§ 14018, 14021.

Touching the main issue involved, of plaintiffs' right to relief, we quote approvingly the following from the opinion of the trial judge:

"Defendants admit that plaintiffs were the owners of said Emerson and Greenbush plants, admit the ownership of Big Cut plant in the railroad company, and the sale of gravel for commercial purposes through the said defendant, Alpena Gravel Company; that said railroad company was advised that it could not legally engage in the commercial gravel business; admit that said railroad company had invested $145,171.68 in equipment and machinery for said Big Cut gravel pit and that it did sell (some) gravel below the cost of production (but that 'the Alpena Gravel Company has operated at a direct profit over the period of its existence'); admit that the railroad company only charged said Alpena Gravel Company a nominal rental for said Big Cut gravel pit; admit that the Alpena Gravel Company sold (some) gravel below cost, but deny discrimination in favor of said Alpena Gravel Company or any unlawful manipulation of freight rates; admit the supervision of the gravel plant by Mr. McHarg, general manager of the railroad company; admit the creation of the separate corporation, said Alpena Gravel Company, for the purpose of providing a practical method of engaging in an incidental business, without any intention of evading the law under which it operated, expressly alleging that it had a right to dispose of its surplus gravel commercially; that 95 per cent. of the commercial gravel sales went into the construction of State highways; that defendants' Big Cut gravel pit was originally built to furnish ballast for the defendant railroad company; that it was immaterial what price the railroad company paid the gravel company or how any deficits of the gravel company may have been settled; that it paid the market price for ballast to said gravel com-

pany, which was usually lower than that paid for ballast by other railroad companies. That the railroad company was the owner of said property and that the same was under the direct management of the officers and general manager of said railroad company, but expressly deny unjust discrimination, and deny any violation of the railroad company's charter rights; but deny that the closing of said pits (of plaintiffs) was due to the operation of Big Cut.
\*    \*    \*

"In this connection it is somewhat illuminating to note a statement in defendant railroad company's answer, wherein they say:  \*    \*    \*

" 'That in 1922, to avoid receivership, it developed Big Cut gravel pit, to obtain gravel for ballast on said road and to sell the surplus thereof for commercial purposes, and growing out of this business was the organization of Alpena Gravel Company; that upwards of 200,000 tons of sand and gravel per year were produced from said pit, which constituted 20 per cent. of the railroad's total tonnage and 90 per cent. of all tonnage between Alpena and Cheboygan, a distance of 70 miles; that continued operation of said plant is indispensable with the continued operation of said railroad.'

"If the railroad was not paying operating expenses and it was necessary to develop Big Cut to avoid receivership, and the company was paying less than the market price for ballast, the revenues contemplated to save the road from receivership would be from the freight on gravel transported for commercial purposes. Such receipts would be the only source of revenue to provide a surplus to avoid such receivership. Since much of the gravel was being sold as low as 5 and 10 cents a ton when it cost at least 35 cents per ton to produce it, the only funds with which to meet such deficit and pay the actual cost of operating said gravel pit was the surplus created from freight receipts on transporting com-

mercial gravel. This deduction must be the true facts of the case or defendants' own contentions are inconsistent. * * *

"The facts and the law when taken together plainly show that the defendant railroad company was guilty of indirectly rebating on freight rates and also of wrongful discrimination against plaintiffs, thereby giving an undue preference and advantage to said Alpena Gravel Company in violation of its corporate powers and duties as such railroad corporation, by reason of such wrongdoings plaintiffs sustained substantial damage.

"Having heard all the testimony and the arguments of counsel, for this court to attempt to point out the specific testimony on which it determines such finding of fact would necessitate a rewriting of nearly all of the testimony taken on the hearing. Suffice to say that it appears from the testimony that the plaintiffs' operations were successful during the years 1919, 1920, and 1921, during which time it was in the act of developing its gravel pits, particularly those at Emerson and Greenbush, installing machinery and equipment at a cost of $178,000, which successful operations gradually increased in total tonnage shipped from Greenbush and Emerson each year until the year 1922, being the year that defendant opened its gravel pit at Big Cut, expending in equipment therefor in the years 1922 and 1923, $145,000. While plaintiffs' Greenbush plant produced less tons of gravel in 1922 than the two years previous, in 1923 there was a slight increase, which materially diminished in 1924, and practically disappeared in 1925, when it was shut down. Plaintiffs' plant at Emerson showed a decrease in output in 1922, which was practically nil in 1923 and 1924, when it was closed down.

"From the above figures it is apparent that plaintiffs were conducting a successful business until the defendant entered into the business, unlawfully, and

began selling gravel at less than the cost of production, which conduct on the part of the railroad company caused the closing down of plaintiff's plant at both Greenbush and Emerson.

"After the defendant understood it could not engage in the commercial gravel business, and the Alpena Gravel Company was organized, as indicated, said gravel company operated the railroad company's gravel pit at Big Cut under a lease from the railroad company for the nominal sum of one dollar a year, ostensibly to permit the railroad company to obtain gravel for commercial purposes to transport over its railroad, to save said railroad from receivership. This, together with the lease of said valuable property for one dollar a year, obviously resulted in giving to said lessee a very significant preference and advantage over another shipper (plaintiff herein), which amounted to a concession, a discrimination, a rebate. *Vandalia R. Co.* v. *United States,* 141 C. C. A. 469 (226 Fed. 713); *Cleveland, etc., R. Co.* v. *Hirsch,* 123 C. C. A. 145 (204 Fed. 849); *Chicago, etc., R. Co.* v. *United States,* 84 C. C. A. 324 (156 Fed. 558, 26 L. R. A. [N. S.] 551).

"The manager of said gravel company, superintendent of defendant railroad company, sold the gravel company's output at 5, 10, and 15 cents per ton, which cost at least 35 cents per ton to produce, the railroad company receiving as high as $1.15 a ton for transporting such gravel to Bay City, and a greater or lesser amount as the distance of transportation varied. Such sale so much below cost of production would soon result in a substantial deficit in the affairs of the gravel company, if the cost of production were not taken care of, which would soon cause a closing down of the Alpena Gravel Company's plant, and would result in receivership for defendant railroad company. But since there was no receivership and the railroad continued to mine and transport gravel, obviously the deficit was met

with funds collected for transporting gravel, because under counsel's own statement it had no other surplus funds with which to meet such expense, and as a result thereof plaintiffs' business and investment were practically destroyed."

In general, if not in every detail, the record sustains the circuit judge's foregoing determination of the controlling facts. The record also conclusively establishes that the Alpena Gravel Company was an instrumentality of the Detroit & Mackinac Railway Company. By reason of its incorporation it was a separate and distinct legal entity, but its affairs were clearly fostered and managed by the railway company. At only nominal cost the railway company furnished plaintiffs' competitor with plant and equipment in which thousands of dollars were invested and for the same nominal consideration allowed this competitor to remove gravel without limit as to quantity from the Big Cut pit which belonged to the railway company. In fact the railway company was gratuitously financing the business of plaintiffs' competitor, the Alpena Gravel Company. This was done by the railway company so that it might secure from the Alpena Gravel Company the business of transporting the latter's product. As to plaintiff corporation, this, under the circumstances of this case, constituted "unjust discrimination" which by statute is made unlawful and renders the wrongdoer liable for resultant damages. 2 Comp. Laws 1929, §§ 11032, 11036; *Vandalia R. Co.* v. *United States, supra; Cleveland, etc., R. Co.* v. *Hirsch, supra; Wisconsin Central R. Co.* v. *United States,* 94 C. C. A. 444 (169 Fed. 76).

We are not fully in accord with the determination of the circuit judge as to the amount of damages awarded. He fixed the value of the properties here

involved at $200,000 as of 1925, when plaintiff corporation was forced to discontinue operations. In July, 1929, because of defendants' wrongdoings, of which plaintiff corporation here complains, it was compelled to dispose of its gravel pits and equipment for $45,000. The difference, $155,000, was the amount of damage decreed by the circuit judge. Careful consideration of this record has convinced us that the valuation of $200,000 is too high.

At the time of the sale to Messrs. Sensibar and Dull, the Federal Gravel Company owned four pits. The Roscommon pit was of practically no value as an operating property. The deposit of gravel was nearly exhausted, its equipment badly depreciated, and the location not very favorable for marketing the product in competition with other producers. The Stinson pit was poorly located, and had been closed since 1922 because freight rates barred it from competing in the market with the product of other pits. Notwithstanding the Stinson pit was well equipped, it was wholly unprofitable, and of little, if any, value. It is not claimed that defendants are in any way responsible for the failure of either the Roscommon pit or the Stinson pit. The Emerson pit, on which plaintiff's expert witness, Mr. Fletcher, placed a valuation of $36,727 as of December 31, 1925, is located 135 miles from Bay City, where, under this record, appears to be its most extensive and prospectively the most permanent market. Defendants' Big Cut pit is located comparatively near the Emerson pit, and is therefore a competitor. Appellees state in their brief: "Big Cut because of its location had a very limited market." Other gravel producing plants are much nearer main market points than either Emerson or Big Cut. As early as January, 1921, tentative ac-

tion was taken at a directors' meeting looking towards the sale of both the Stinson pit and the Emerson pit. The company's records show that the former was offered for sale at half its cost, and the proposition refused. We think it rather certainly appears from this record that even in the absence of any discrimination such as plaintiffs here complain of, because of its unfavorable location and attendant high freight rates, the Emerson plant would have been forced to close, as was the Stinson plant. The Greenbush pit was more favorably located. It was only 87 miles from Bay City, and could compete in the market favorably with other gravel producers. Its mileage in shipping to that point was a little more than half that from Big Cut or Emerson, the former being 159 miles from Bay City and the latter 135 miles. Freight charges usually being a large, if not the largest, cost item of gravel, the importance of location of pit relative to market is obvious. The expert, Fletcher, testifying for plaintiffs, fixed the value of the Greenbush plant, after allowing depreciation of equipment and depletion of deposit, as follows: 1922, $115,519; 1923, $116,180; 1924, $108,671, and 1925 (December 31), $103,284. Our review of the record leads us to accept these as approximately correct valuations notwithstanding there is other testimony placing a much higher value on the property. Had it not been for the unjust discrimination for which defendants were responsible, we think the Greenbush plant could have been successfully operated and with its large deposit of gravel would have continued as a valuable property. We cannot say this of any of the other properties sold by the Federal Gravel Company to Messrs. Sensibar and Dull. As noted, for the properties so sold $45,000 was received. At the time of the sale

the Federal Gravel Company was badly in debt because of having operated at a loss, and the consideration received was used to settle with its creditors on the basis of paying 40 cents on the dollar. Placing a value of $105,000 on the properties sold, and deducting the amount received, the difference of $60,000 is, we think, the just amount of damages disclosed by this record.

Appellants complain that the rule of damages applied by the circuit judge and herein adopted is improper. They assert that the damage which plaintiffs are entitled to recover (if any) is the difference between the rate plaintiffs were compelled to pay and that paid by the Alpena Gravel Company. Obviously application of this rule to the facts in the instant case, where shipments were wholly discontinued and the properties sacrificed because of defendants' wrongdoings, would practically deprive plaintiff corporation of any remedy whatever. Courts have often noted the difficulty of applying to this type of case a rule of damages which will accomplish exact justice. An interesting discussion of this difficult phase of the law will be found in *United States Frumentum Co.* v. *Lauhoff*, 132 C. C. A. 614, 621, 630 (216 Fed. 610, 617, 626), wherein Judge Denison said:

"There must be, in the nature of things, in all except the most extraordinary cases, if not in all, available testimony which can be employed with sufficient approximation to the true value—at least to justify its admission against any admitted or proved trespasser. Denial of such a proposition must rest upon the idea that it is better for wrongs to go without redress than that they shall be redressed with imperfect accuracy. * * * .

"To send the successful plaintiff away after years of litigation and with only nominal damages is re-

pellant to the sense of justice. Such a result has been many times condemned; it is characterized by Judge Severens as 'an untoward ending of a good cause' (*Brennan & Co.* v. *Dowagiac Manfg. Co.*, 89 C. C. A. 392, 393, 398 [162 Fed. 472, 473, 478]), and led him to say, speaking of the patentee's difficulty in preserving his rights:

" 'But this only enhances the obligation of the courts to find a way, if it be possible, to redress the wrongs done by those who have been willing to gather the fruit into their own basket.' * * *

"The books are full of cases where damages or profits have been allowed upon reasoning that poorly satisfies the rules of proof as applied in other controversies, and the cases present a constant and uncertain contest between the desire to do what seems to be justice and the necessity of observing legal rules."

In a recent opinion of the United States Supreme Court, Justice Sutherland said:

"The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount. * * *

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making,

were otherwise." *Story Parchment Co.* v. *Paterson Parchment Paper Co.,* 282 U. S. 555, 562 (51 Sup. Ct. 248), citing authorities including *Allison* v. *Chandler,* 11 Mich. 542, and *Gilbert* v. *Kennedy,* 22 Mich. 117.

As noted in appellants' brief, there is conflict of authority as to the measure of damages in such cases, citing *National Radiator Co.* v. *Railroad Co.,* 6 N. J. Misc. 778 (143 Atl. 85). Because of an express statutory provision in this State, there is no occasion for reviewing decisions from other jurisdictions; and also because of our statutory provision we think it is clear that appellants' contention as to the measure of damages cannot be sustained.

"If any common carrier shall do, or cause to be done, or permit to be done, any matter, act or thing in this act prohibited or declared to be unlawful, \* \* \* *such common carrier shall be liable to the person, firm, or corporation injured thereby in double the amount of damages sustained in consequence of such violation.*" 2 Comp. Laws 1929, § 11035.

In part plaintiff's prayer for relief is as follows:

"That said defendant railroad company be required to come to an accounting with the plaintiffs and pay to the plaintiffs such sums of money as will fairly compensate the plaintiff for the loss and damage it has sustained at the hands of said defendant."

Plaintiffs' claim is that by reason of violating the statute the defendants practically ruined plaintiffs' business as a going concern and rendered their properties used in the business of much less value than they otherwise would have been. It so happens in the instant case that since this suit was started the Federal Gravel Company, to satisfy its creditors, was practically forced to sell its properties. The

record sustains the conclusion that defendants' alleged misconduct rendered these gravel properties of far less value than they otherwise would have been and forced plaintiff corporation into a financial condition such that it was obliged to sell these properties for $45,000. In consequence it suffered a direct loss of $60,000.

In this connection, it should be noted that appellants contend that there were other contributing causes which account for plaintiffs' damages above noted. There is proof of falling off of highway construction with resultant decrease in market, change in freight rates, competition from other gravel producers, over capitalization of plaintiff company, insufficient working capital, inefficient management, etc. These respective contentions presented issues of fact for determination by the circuit judge. Our investigation of this record discloses no reason for disturbing his holding that the proximate cause of plaintiff's failure in business was the unjust discrimination by the railroad company against plaintiff as charged in the bill of complaint.

As noted above, pending this suit, the Federal Gravel Company sold its pits and equipment to a copartnership composed of J. R. Sensibar and Raymond W. Dull, doing business as the Michigan Gravel Company. Pending the hearing in the circuit court, the application of this copartnership to intervene was granted. Appellant urges that because the Federal Gravel Company disposed of its physical properties *pendente lite* it is therefore not entitled to the injunctive relief prayed in the bill of complaint, and that its sole remedy, if any, is recovery of damages for which it has an adequate action at law. On this account, it is urged that plaintiff should be denied any relief in this equitable pro-

ceeding. Under the peculiar circumstances of this case, appellants' contention in this regard cannot be sustained. Both Mr. Sensibar and Mr. Dull were interested as stockholders and creditors of the Federal Gravel Company at the time this suit was instituted. Each was an indorser on obligations of the Federal Gravel Company. Being confronted with the necessity of making some disposition of the outstanding liabilities of the Federal Gravel Company, and in the hope of saving themselves at least in part from loss, these two men purchased the physical property of the Federal Gravel Company. When they intervened they adopted as their pleading in the case the bill of complaint already on file. The issues in the case were in no way changed by the intervention permitted by the circuit judge. The relief sought by plaintiffs after intervention was permitted was no different than prior thereto. Under these circumstances and for these reasons the circuit judge was justified in permitting the intervention and in holding (as he did by implication incident to defendants' motion to dismiss) that the court still had power to make an equitable disposition of the questions presented by the original bill of complaint.

Under the record, we think there is no merit to the contention of appellants as set forth in their brief touching the matter of champerty and maintenance; nor of the contention that the Federal Gravel Company is not in court with clean hands. Nor is there force in defendants' claim that the instant suit is based upon alleged *ultra vires* acts of the defendant railway, and therefore the State is the only proper party plaintiff. Instead, plaintiffs bottom their case on the alleged violations of the statute, which expressly authorizes the relief sought. And further, having incorporated and operated the

Alpena Gravel Company, the railroad company cannot now be heard to deny the separate corporate entity of that company, and urge in defense of plaintiffs' suit charging unlawful discrimination that the railway company was in fact operating its own gravel pit and transporting and selling its own product, and hence not guilty of unlawful discrimination. Such a claim does not at all harmonize with the several leases entered into by the railway as lessor and the Alpena Gravel Company as lessee, nor with the explanation to the attorney general of the State as to the manner in which this business was being conducted by defendants.

Appellants complain of the trial judge's order denying their motion for leave to amend the answer by adding thereto the defense that plaintiffs' claim for damages was barred by the statute of limitations. Defendants' original answer was filed September 28, 1929; and its amended answer March 1, 1930. The taking of proofs in open court began March 3, 1930. The motion for leave to amend the amended answer was filed August 4, 1930. Relative to his denial of this motion, the following is stated in the opinion filed by the circuit judge:

"After admitting plaintiffs' right and interest in and to the matters involved in this issue, by their answer, and after the matter had been before the Supreme Court and several weeks consumed in taking testimony in the circuit court, defendants' motion to amend clearly comes too late and consequently is denied."

Under the circumstances, granting or denying leave to amend, at least in a large measure, was within the discretion of the trial judge. It is only fair to assume that, at the time this motion was made, the trial judge was convinced that the equities of

the case dictated its denial. See 3 Comp. Laws 1929, § 14144. We find nothing in the record which would justify us in disturbing the ruling of the trial court as made.

Much of the conflict between counsel representing the respective parties is fundamentally due to an irreconcilable difference of opinion as to the scope and purpose of defendants' business in producing and marketing commercial gravel. The issue is thus propounded in appellants' brief: "Can a railroad company legally sell its *surplus* gravel commercially, with the idea of furnishing freight?" Later in the briefs appellants' contention is thus amplified:

"Under the evidence, the primary purpose of defendants' Big Cut pit was to provide ballast for defendant railway company, and its secondary purpose was to enable the sale commercially of surplus gravel from this pit; defendant railway company imperatively needed this gravel traffic to produce freight revenue; without this traffic, it would probably have been in receivership, because the revenue from this traffic was its margin between operating at a loss and at a very small profit. * * * The specifications which it adopted for its ballast left a considerable residue proper to be used for commercial gravel. Why should it not be permitted to dispose of this surplus commercially? Especially, as it imperatively needed the traffic? It seems only good, common sense that it should have the right to dispose of this surplus commercially, rather than to accumulate it at the pit."

The record does not sustain as *bona fide* the railroad company's contention that it operated this gravel pit primarily to obtain ballast for use in its roadbed, and that the sale of commercial gravel as a by-product was a mere incidental. The very fact that the railroad company finally caused an inde-

pendent corporation to be created to carry on this activity is strongly indicative, to say the least, that it had been and proposed to continue, producing and marketing gravel commercially, rather than operating the Big Cut pit as it perhaps had contemplated in the first instance for the primary purpose of producing ballast for its roadbed. Rather persuasive evidence on this phase of the record is found in the following provision of the lease under which the Alpena Gravel Company operated the railroad company's Big Cut pit from 1924 to 1927:

"The gravel company agrees to produce and sell at the highest price attainable, all commercial gravel in excess of the railway company's ballast requirements, it being understood that the main purpose of the Alpena Gravel Company is to produce traffic for the railway company to move, and, therefore, when necessary to further this end, the gravel company may sell at less than its actual cost of production."

Careful consideration of the record in this case forces the conclusion that the defendants were primarily interested in producing and selling commercial gravel so that the railroad company might profit from the traffic incident to its transportation.

Appellants cite many authorities to the proposition thus stated in 1 Wood on Railroads (Minor's Ed.), § 170:

"There is no question but that railroad corporations have as auxiliary or incident to their main or authorized business all the powers which an individual would have under the same circumstances; and the extent of these powers is to be determined, not only by reference to the express powers conferred by the charter, but also to the nature, extent, and necessities and conveniences of the business and of the public."

Without doubt, the defendant railroad company had the right to carry on any line of activity which might fairly be regarded as incidental, necessary, or suitable to the exercise of the power expressly conferred upon the corporation. *Duluth, etc., R. Co.* v. *Wilson,* 200 Mich. 313, 322 (L. R. A. 1918 E, 763). But the charge here made against it, and sustained by the record, is that, in organizing the subsidiary Alpena Gravel Company and actively engaging through it in the production and sale of commercial gravel in competition with plaintiffs, it not only exceeded both the express and implied powers of the corporation, but by selling such gravel at a price below the cost of production for the purpose of securing to itself the business of shipping such gravel, it subjected plaintiffs as shippers over defendant railroad to unjust discrimination. This was a violation of the statute which rendered defendants liable for resulting damages. 2 Comp. Laws 1929, §§ 11032–11035. Violation of the statute likewise entitles the injured party to injunctive relief. 2 Comp. Laws 1929, § 11063; *Federal Gravel Co.* v. *Railway Co., supra.*

The Federal Gravel Company urges that, because of the statutory provision (2 Comp. Laws 1929, § 11035), it is entitled to have double damages. It perfected a cross-appeal in which this question is raised. Notwithstanding the statute, an equity court will not under all circumstances decree double damages. *Fletcher Paper Co.* v. *Railway Co.,* 198 Mich. 469. It appears from the record in the instant case that, complaint having been made against it concerning the production and sale of gravel, the defendant railroad company conferred with the proper State authorities and thereupon certain suggestions as to the manner in which defendants should carry on the

gravel business were made by the attorney general, which suggestions were followed by defendants. Thereafter no further objection was made by the State. From this it may well be inferred the defendant railroad company believed that in operating the gravel business through the Alpena Gravel Company it was within its legal rights. We are of the opinion that double damages should not be decreed, nor should interest be allowed until after decree in this court. As herein modified, the decree entered in the circuit court is affirmed, but because of minimization of damages, no costs will be awarded in this court.

McDONALD, C. J., and CLARK, SHARPE, and BUTZEL, JJ., concurred with NORTH, J.

WIEST, J. (*dissenting*). The injury, if any, was personal to plaintiff's predecessor and not to its estate or property, and, being a personal tort, right of action was not assignable. Even if assignable, an allegation that plaintiff is successor was not equivalent to an assignment of a tort action; nor can I hold that neglect to make denial is an admission under former Circuit Court Rule No. 25 (1916).

I think the bill should be dismissed, with costs to defendants.

FEAD, J., concurred with WIEST, J. POTTER, J., did not sit.