LUYCKX v. R. L. AYLWARD COAL CO.

1. CORPORATIONS—SALARIES—MANAGER—BOARD OF DIRECTORS—CONTRACTS.

Corporation's contract to pay its manager $1,000 per month for period of 10 years *held*, not to violate previous contract for like period at $500 per month that was entered into while earlier contract, requiring any increase of such salary to have unanimous consent of board of directors was still in effect, where all directors approved later contract.

2. SAME—SALARIES—OFFICERS—EXCESSIVENESS.

In suit for accounting for excessive salaries paid to manager of corporation, whether or not such salary is excessive is a matter of fact in the determination of which all the circumstances of the case should be considered provided the contract is not void.

3. SAME—CORPORATE MANAGEMENT—AUTHORITY OF BOARD OF DIRECTORS.

The authority of the board of directors of a corporation is absolute when they act within the law and questions of policy and internal management are, in the absence of nonfeasance, misfeasance or malfeasance, left wholly to their decision.

4. SAME—INCREASE OF SALARY OF MANAGER.

Ratification of increase of salary of corporation's manager, if made in good faith and believed to be for the best interest of the company, validates the increase.

5. SAME—FRAUD—CONTINUANCE OF BUSINESS IN ADVERSE CIRCUMSTANCES.

In suit for dissolution of corporation conducting a coal business and an accounting for alleged excessive salary of its manager, fraud *held*, not shown in the increase of manager's salary from $500 to $1,000 per month while sales and profits decreased, where corporation struggled along in adverse circumstances and because of his management and business skill continued its operation while other coal companies closed entirely.

6. SAME—MANAGER—UNJUSTIFIED EXPENSES.

Expenditure of $8,665.87 for liquor, cigars, telephone, turkeys, hotel expenses, etc., by manager of corporation engaged in coal business without giving an accounting to the stockholders as to purposes for which it was spent *held*, not justified without the consent and approval of the directors.

7. SAME—MANAGER—INTOXICATING LIQUORS.

Expenditure of $6,598.64 for whiskey by manager of corporation engaged in coal business during period when traffic in intoxicating liquors for beverage purposes was illegal *held*, not subject to ratification under any circumstances.

8. SAME—OFFICERS—ACCOUNTING FOR MONEYS IRREGULARLY OBTAINED.

Officers of a corporation who appropriate corporate moneys by irregular and devious devices may not justify themselves by

mere oral claims of honest application of said funds, but proof of honest disposition must be clear, since trickery of method implies dishonesty.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 22, 1935. (Docket No. 81, Calendar No. 38,164.) Decided March 5, 1935.

Bill by Edmund T. Luyckx, administrator of the estate of Elizabeth Aylward, and Helen Aylward Luyckx against R. L. Aylward Coal Company, a Michigan corporation, Harold N. King and others, for dissolution, appointment of a receiver, an accounting and other relief. From decree rendered, all parties appeal. Modified and affirmed.

*Henry C. L. Forler,* for plaintiffs.

*Atkinson, Ortman, Shock & Watson,* for defendants.

EDWARD M. SHARPE, J. For a number of years prior to 1922, R. L. Aylward had operated a coal yard in the city of Detroit. During most of this time, defendant King had been connected with Mr. Aylward in the business as office manager, while Mr. Aylward had charge of the business from the outside, which in a large measure was the getting of orders for coal. For some time prior to incorporation, the salary of defendant King was $275 per month and 25 per cent. of the profits of the business. Richard Aylward died intestate in February, 1922, and Elizabeth Aylward acquired title to the business from her mother who was the sole heir of Richard Aylward.

The company was incorporated in August, 1922, with a capital stock of $80,000, consisting of 800 shares of the par value of $100 per share, of which 798 shares were issued to Elizabeth Aylward, one

share to defendant Harold King, and one share to Helen King, wife of defendant Harold King. In September, 1922, Elizabeth Aylward transferred to Harold King 398 shares and entered into the following agreement:

"It is agreed by and between the parties that the said second party shall be paid such salary as may be fixed by the directors of the corporation, but in no event shall this salary be greater than $500 per month, unless all of the directors agree thereto."

When the company was incorporated its assets were in excess of $80,000 and the surplus of approximately $29,000 was set up in the books as a "tax reserve." At a meeting of the directors held September 6, 1922, defendant King's salary was fixed at $350 per month and at another meeting held during the same month, it was resolved that defendant King be advanced $150 per month, in addition to his salary, which sum was to be used by him for expenses in promoting sales. From May, 1923, up to and including January, 1932, with the exception of three months, Mr. King drew a salary of $500 per month, while the record does not show any formal resolution authorizing such salary to Mr. King, yet it apparently was done with the consent of all directors and stockholders. On February 1, 1932, Elizabeth Aylward died leaving as her sole heir Helen A. Luyckx, one of the plaintiffs herein. On the 8th day of February, 1932, a special meeting of the board of directors was held and Frank W. Atkinson, one of the defendants herein, was elected a director of said company by the surviving directors Harold King and Helen King to fill the vacancy caused by the death of Elizabeth Aylward.

At the same meeting the board of directors entered into a contract with Harold King for a sal-

ary of $1,000 per month for a period of 10 years as manager of the corporation, although the original contract with Harold King did not expire until September 1, 1932.

At the annual meeting of the stockholders held September 30, 1932, objections to the $1,000 per month salary of Harold King were made by the plaintiff. At the adjourned meeting of stockholders held October 4, 1932, plaintiff Luyckx asked the board to rescind Mr. King's contract of $1,000 per month and recommend that the salary be $500 per month. This motion to rescind was lost, 400 shares of stock voting for it and 400 shares against it.

The record in this case shows that during the period that Miss Aylward was alive, the company did no newspaper advertising; the sales were promoted by personal contact with customers and others and, to this end, money was spent for cigars, liquor and clothing in procuring business; and that from August, 1922, to August, 1933, there was spent for liquor $6,598.64, cigars $1,200, telephone $97.62, turkeys $377.66, hotel expenses $262.95, and E. F. King expense account $129. These expenses were so charged in the books of the company that the purposes for which the expenditures were made could not be ascertained by an examination of the books.

The record also shows that for the year ending July 31, 1923, the company sold 59,800 tons of coal with a net profit, after income tax was paid, of $53,783.53 and that the sales and profits shrank each year thereafter until the year ending July 31, 1933, when the tonnage sold had been reduced to 28,066 tons with a deficit of $23,739.69.

Upon this showing plaintiffs filed a bill of complaint asking for dissolution of the corporation, the appointment of a receiver, and an accounting from

Harold King for the salary drawn by him from February, 1932, to September 15, 1933, in excess of $500 per month, amounting to $9,750, and all expenditures claimed to have been made by him for promotion of sales in excess of the $150 a month advanced to him for that purpose amounting to $8,665.87.

The trial judge filed an opinion January 4, 1934, denying plaintiffs' right to an accounting for the excess salary, holding that the new contract with defendant Harold King was not unreasonable and was not entered into in bad faith. The court also ordered Mr. King to account for the moneys expended for liquor, but denied an accounting for other expenditures made by Mr. King.

There are two questions that present themselves to us, they are, namely, the legality of the new contract with Mr. King and the expenditure of $8,665.87 claimed to have been made in promotion of sales in excess of the $150 per month advanced for that purpose.

When the board of directors met February 8, 1932, a vacancy existed in the membership of the board owing to the death of Elizabeth Aylward and this vacancy was filled by the remaining two directors in the appointment of Frank W. Atkinson as the third member of the board of directors.

The board proceeded to enter into a contract with defendant King whereby they granted him a salary of $1,000 per month as manager of the corporation. Such action does not violate the agreement entered into September 6, 1922, wherein defendant King agreed to manage the company for a period of 10 years at a salary to be fixed by the board of directors, but in no event greater than $500 a month unless all of the directors agreed thereto, as all of

the then directors agreed to the new contract. The board had power to enter into a new contract at that time even though the old contract with defendant coal company had seven months to run. One of the complaints in the instant case is that the increase in salary voted to defendant King was excessive, but we think the general rule is that whether a salary is excessive is a question of fact in the determination of which all the circumstances of the case should be considered, provided the contract is not a void contract.

In *Nahikian* v. *Mattingly,* 265 Mich. 128, 132, this court, speaking through Mr. Justice WIEST, said:

"It is a well-settled rule of law that the authority of the directors is absolute when they act within the law, and that questions of policy and internal management are, in the absence of nonfeasance, misfeasance, or malfeasance, left wholly to their decision. Ratification by the board of directors of an increase in defendant's salary, if made in good faith and believed to be for the best interest of the company, validated the increase."

The lower court in reaching his conclusion that the new contract was not unreasonable under the circumstances said:

"There was no one except King to preserve and carry on the family coal business, which, without his efforts, would undoubtedly have disintegrated. Through his management and business skill the business had paid to Elizabeth, up to the time of her death, a monthly rental of $500 per month upon her land, and profits from 20 to 25 per cent. per annum. * * *

"It is true that the earnings of the company were constantly diminishing when King's salary was increased, but there is nothing to show that this was

due to any lack of effort or attention, or the exercise of poor judgment on King's part.   Other coal companies less soundly financed were closing up entirely.   The continuance of the R. L. Aylward Coal Company depended entirely upon King's continuing his connection with it.   The present plaintiffs who succeeded to Elizabeth's interest in the business were not practical coal merchants, knew nothing of the mechanics of the business, had no buying or selling connections and were dependent upon King's efforts for a preservation of their interests in the company.   The plaintiff, Edward Luyckx, was engaged in the real estate business on a broad scale and was harassed by his own problems. His wife, a coplaintiff, was the mother of a family of children and in no position to help run a coal yard.   It is apparent that upon Elizabeth's death King was the soul and spirit of the coal company.''

It might also be said that greater individual effort and ability may be required of corporate directors and officers when the corporation is struggling in adverse circumstances.   32 Michigan Law Review, 675.

The record shows that the trial court had ample proof to reach the conclusions that he did and we find no proof of fraud in the action of the board of directors in entering into the new contract with defendant King.

The plaintiffs next contend that the expenditure of $8,665.87 claimed to have been made in the promotion of sales was an unlawful expenditure.

The facts are that defendant King was given an allowance of $150 per month to promote sales.   In addition he spent this large sum of money without ever giving an accounting to the stockholders as to how it was spent, but rather deceived them as to these items and had them so charged that the purpose for which the expenditures were made could

not be ascertained by an examination of the books. Under the circumstances such an expense was not justified without the consent and approval of the directors of the company. This consent was never obtained.

It may also be said that the money spent for whiskey was illegal and could not be ratified under any circumstance.

In *Re Petition of Farber*, 260 Mich. 652, the court uses this language:

"Receivers and officers of corporations who appropriate corporate moneys by irregular and devious devices cannot justify themselves by mere oral claim of honest application of the funds. Trickery of method implies dishonesty, and proof of honest disposition must be clear."

In the recent case of *Nahikian* v. *Mattingly, supra,* Leonard H. Mattingly, Sr., president of the corporation, was required to account for moneys claimed to have been expended by him in the interest of the company. The court held the expense was not justified and on page 132 this language is used:

"Defendant's activities in Washington, as described by himself, were quite nebulous, and in no sense called for or justified purchase of a residence, a Cadillac automobile, and employment of chauffeurs at the expense of the company. All company money, so expended, must be returned as ordered by the circuit judge."

The decree of the circuit court is modified to accord with this opinion and, as modified, is affirmed, with costs to plaintiffs.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.