## SAWYER v. CROWELL PUB. CO.

District Court, S. D. New York.
April 30, 1942.

Myers & Guerin, of New York City (Joseph K. Guerin, of New York City, of counsel), for plaintiff.

Moynihan & McKeown, of New York City (Arthur Moynihan, of New York City, of counsel), for defendant.

MANDELBAUM, District Judge.

This is a copyright infringement suit.

In March of 1929, plaintiff was appointed to the post of Executive Assistant to the Secretary of Interior and received a salary from the Government in this capacity. In the summer of 1929, he was sent to Alaska on a government mission. On his return, he contacted one Wilbur S. Wills, employed as a cadastral engineer in the Division of Surveys, Department of Interior, since 1911. Discussions between the two were had regarding a Great Circle Map which plaintiff wanted to have made. Both plaintiff and Wills worked on the details for several months (Wills doing most of the physical work). Wills used materials furnished by the Government, as well as its other facilities such as scientific information which was on file with the Division of Surveys. The Great Circle Map was completed and then printed and engraved by the United States Geological Survey, a division of the Department of Interior, devoted to the printing of maps. Plaintiff thereupon copyrighted the map on April 22, 1930. This map was entitled "Great Circle Map showing Fairbanks, Alaska, a Geographical Center of Europe, Asia and America" (Plaintiff's Exhibit "1" hereinafter called copyrighted map). Also, on this map appeared the legend "Data obtained from official sources, computations on this map verified by the General Land Office".

Pursuant to an Act of Congress of May 15, 1930, 46 Stat. 335 a Commission was created for a study regarding the construction of a highway to connect the Northwestern part of the United States with British Columbia, Yukon Territory and Alaska. Plaintiff was appointed as one of three Commissioners. At that time he was still Executive Assistant to the Secretary of Interior, and remained as such until the Spring of 1933.

On February 1, 1931, plaintiff's map which he had originally copyrighted on April 22, 1930, was republished and to which was added eleven red lines showing the mileage distances between certain of the cities located on the said map. This map was entitled "Great Circle Map showing Fairbanks, Alaska, a Geographical Center of Europe, Asia, America and the Terminus of the Pacific Yukon Highway Map. No. 8" (Defendant's Exhibit "B"). The plaintiff did not secure a copyright registration for the additional matter added to the one copyrighted on April 22, 1930.

The Highway Commission, by permission of the plaintiff, caused to be printed by the United States Geological Survey 10,000 copies of Map No. 8. The printing expense was paid by the Commission.

A government publication entitled "General Information regarding the Territory of Alaska" edition of June, 1931, was printed by the United States Department of Interior. On page 107 thereof, there appears the heading "Department of Interior Publication Relating to Alaska" and on the list that follows appears the title "Great Circle Map showing Fairbanks, the Center of Europe, Asia and America, Map No. 8".

The defendant printed and published an issue of "Collier's, the National Weekly" for December 4, 1937, which on Page 12 thereof contained a map entitled "Great Circle Map showing Fairbanks, Alaska, a Geographical Center of Europe, Asia and America" (Plaintiff's Exhibit "2"). The defendant concedes that the map which appears in Collier's is a copy of portions of plaintiff's republished map of February 1, 1931—Map No. 8 (Defendant's Exhibit "B").

Plaintiff makes no claim against the defendant with respect to his republished Map No. 8. The charge of infringement relates solely to his copyrighted map. In other words, no claim is made against the

defendant for having copied the additional matter contained in the republished copy of February 1, 1931.

The defenses to this suit may be placed in two categories. As to the first, it is submitted that plaintiff at the time of the preparation of the copyrighted map, as well as Map No. 8, was an employee of the Department of Interior and that any property right that may exist in the map belongs to the United States; that any copyright issued to the plaintiff would be in trust for the United States Government; that Map No. 8 from which defendant concededly copied is a Government publication, having been prepared by the United States Department of Interior and therefore not subject to copyright.

The second deals with the actual claim of infringement. As to this, it is contended that the plaintiff's copyright, even if valid, does not extend to the material added to the republished map; that the map published in Collier's contains this additional matter; that the map published in Collier's does not infringe plaintiff's copyrighted map.

■■ It is true that the mere fact that one has created or invented something while in the employ of the government does not transfer to it any title to or interest in it. Solomon v. United States, 137 U.S. 342, 11 S.Ct. 88, 34 L.Ed. 667. But it is equally true that when an employee creates something in connection with his duties under his employment, the thing created is the property of the employer and any copyright obtained thereon by the employee is deemed held in trust for the employer. Brown v. Molle Co., D.C., 20 F.Supp. 135; United States Ozone Co. v. United States Ozone Co., 7 Cir., 62 F.2d 881, 887.

Plaintiff, in asserting that the map does not belong to the Government, takes the position that there is not the remotest connection between his employment in the Department of Interior in 1929 and the creation of the map. With this, I cannot agree. The evidence is persuasive that this map was drawn to stress the importance of Alaska, as well as the need for its development, and this relates directly to the subject matter of the plaintiff's work. In this connection, it is undisputed that both the plaintiff and Wills were in the employ of the United States Government and received their only compensation from that source. Wills was never paid by the plaintiff for preparing this map which took several months to complete. There is no evidence that this was not done on government time. The plaintiff's testimony with regard to a promise to pay Wills for preparing the map, if it proved to be a success, is unconvincing.

In preparing the map, Wills availed himself of scientific information on file in the survey department of the United States as well as its facilities. The copyrighted map and Map No. 8 were set up in the form of a government publication. In the booklet published by the Department of Interior entitled "General Information Regarding the Territory of Alaska", it is clear that the Map No. 8 was a Department of Interior map relating to Alaska, and as such was not subject to copyright. Further, plaintiff failed to produce any receipt or document of title to the map, which I believe could have been obtained if he were entitled to it (he testified that he paid $29 or $37 for 1,000 copies). While its absence is not conclusive against the plaintiff, it is of some consequence.

■ I will not say that plaintiff's copyright and credit notices appearing on these maps are of no probative value in support of his position. The fact that 10,000 copies of Map No. 8 were printed by permission of the plaintiff at the request of the Highway Commission is also important. But considered in their true perspective, they lose their significance. First, the plaintiff, in service of the Government, was the superior of Wills and in printing the map, the direction to place a copyright notice on the map was carried out without question. Secondly, it is not unusual to credit a public official for having undertaken some work on behalf of the Government or municipality. Credit notices are often seen on public improvements. This, however, does not create a property right in the individual. Thirdly, it was natural for the Commission to seek permission to print the desired number of copies from the copyright owner. It was not for the Commission to determine whether plaintiff had a valid copyright or whether the map was one belonging to the Government.

■ From all the evidence, I have come to the conclusion that any property right which the plaintiff may have in the map copyrighted on April 22, 1930, as well as the one republished on February 1, 1931, belongs to the United States Government. It follows that even if a valid copyright

474

exists in the plaintiff, it is deemed held in trust for the United States Government.

While this ruling is decisive and bars any relief to the plaintiff, it would not be amiss to express my views regarding the claim of infringement by the defendant of plaintiff's copyrighted map (Plaintiff's Exhibit "1"). The court has examined all the exhibits and has made a comparison of the plaintiff's copyrighted map and the map reproduced by the defendant in Collier's. Concededly, the map in Collier's was based on Map No. 8 which was republished February 1, 1931. Primarily, Collier's map embraces the mileage distances between the various cities, the latitude and longitude of some of the principal cities of the world and the continental outlines. As to the lines and mileage distances which appear on the republished map of February 1, 1931, plaintiff did not secure a copyright and hence the same is not within the protection of any copyright. As to the continental outlines and the latitudes and longitudes, both are in the public domain (the sources from which they were taken are available to anyone). The claim therefore that the defendant infringed on plaintiff's copyrighted map must fail, even assuming that the plaintiff's copyright is a valid one.

The plaintiff having failed to sustain the burden of proof, judgment is rendered in favor of the defendant. The court has filed its own findings of fact and conclusions of law, in accordance with the opinion.