STORER BROADCASTING CO. v. JACK THE BELLBOY, Inc. et al.

No. 11271.

United States District Court
E. D. Michigan, S. D.

Aug. 28, 1952.

Supplementary Conclusion of Law
Sept. 11, 1952.

Poole, Warren & Littell, Detroit, Mich., for plaintiff.

George Trendle, Jr., Detroit, Mich., for all defendants except Richard Connell.

LEDERLE, Chief Judge.

### Findings of Fact.

#### I

This is an action seeking redress for the conversion by defendants of a Detroit radio program using the name of "Jack the Bellboy." Jurisdiction is predicated upon diversity of citizenship, with more than $3,000 in controversy, under 28 U.S.C.A. § 1332. The initial conversion occurred after the parties were advised that the Federal Communications Commission would approve a purchase agreement whereby plaintiff was to acquire all property of Detroit Radio Station WJBK from various defendants upon FCC approval. Such radio program was an asset of Station WJBK at the time the purchase agreement was executed and should have passed to plaintiff upon consummation of the purchase after FCC approval. Under circumstances hereinafter detailed, the conversion was accomplished by incorporating such program as a separate Michigan corporation and concealing from plaintiff the fact that such program had ever been an asset of the station being sold. Plaintiff presently is owner and licensee of Detroit Station WJBK. Defendant WXYZ, Inc., has been broadcasting this program over its Detroit Station WXYZ for six months with notice of plaintiff's claims.

#### II

On September 14, 1946, plaintiff, with Henrietta Connell and defendants Richard A. Connell, Jr., and James F. Hopkins, executed a purchase agreement whereby the latter three agreed to sell and plaintiff agreed to purchase all capital stock of James F. Hopkins, Inc., a Michigan corporation. This corporation was owner, licensee and operator of said Station WJBK. Such purchase agreement provided that it was conditioned upon transfer approval being granted by the FCC.

#### III

In April, 1947, the parties were advised through Washington counsel that the FCC would approve the sale. The formal order of approval was issued June 19, 1947. In accordance with the purchase agreement, as approved by the FCC, all capital stock of James F. Hopkins, Inc., was assigned to plaintiff on July 9, 1947.

#### IV

Plaintiff thereupon changed the corporate name of the seller corporation to Detroit Broadcasting Company, took over its assets, assumed its liabilities, dissolved the corporation, and has continued to carry on the radio station business formerly conducted by it.

#### V

At all times material hereto, plaintiff corporation was represented by its President, George B. Storer, and the selling corporation, James F. Hopkins, Inc., by its President and General Manager, James F. Hopkins, and its Secretary and Treasurer, Richard A. Connell, Jr. The latter two constituted a majority of the Board of Directors of the selling corporation, and, with Henrietta Connell, owned the stock of the selling corporation.

#### VI

Prior to the purchase agreement of September 14, 1946, and continuously up to May 1, 1947, the selling corporation owned and broadcast the program, "Jack the Bellboy" over the facilities of its Station WJBK. This program was conceived and developed by defendant Edmond T. McKenzie during the summer of 1945, while an employee of the selling corporation. The name was appropriated from a musical composition similarly entitled, which was played as a theme at the beginning and close of the program. The program was presented on regular station time, during McKenzie's regular workday, as a regular assigned duty.

For McKenzie's services in preparing and presenting the program, the selling corporation compensated him by regular salary and talent payment commissions on advertising, without any special agreement as to ownership.

## VII

On May 1, 1947, defendants James F. Hopkins and Richard A. Connell, Jr., managing officers of the selling corporation, executed an instrument to transfer the name "Jack the Bellboy" to a Michigan corporation known as Jack the Bellboy, Inc. This latter corporation was then in process of incorporation. Its articles of incorporation were signed May 1, 1947, and filed May 19, 1947. The incorporators were defendants Edmond T. McKenzie and wife, Madeline McKenzie, Richard A. Connell, James F. Hopkins and wife, Ruth L. Hopkins. The transfer was without consideration as to the selling corporation. After the transfer, defendants James F. Hopkins, Ruth L. Hopkins and Richard A. Connell, Jr., owned 51 per cent of the capital stock of Jack the Bellboy, Inc., and defendants Edmond T. McKenzie and Madeline McKenzie owned the remaining 49 per cent, which ownership has remained unchanged since that time. No consideration was paid by any of these parties for such stock in Jack the Bellboy, Inc.

## VIII

Edmond T. McKenzie continued his services for Station WJBK after plaintiff was substituted as his employer on July 9, 1947, until he resigned on January 16, 1952. His broadcasts of the program "Jack the Bellboy" were purportedly through his arrangement with Jack the Bellboy, Inc. Just prior to his resignation, McKenzie entered into an executory contract with Station WXYZ to present the program "Jack the Bellboy" over the facilities of Station WXYZ beginning February 4, 1952.

## IX

On January 22, 1952, plaintiff notified WXYZ, Inc., that plaintiff was the lawful owner of the program "Jack the Bellboy" and entitled to the exclusive use of such name for radio broadcast purposes in Detroit. Notwithstanding, WXYZ, Inc., has broadcast "Jack the Bellboy" programs under that name over the facilities of Station WXYZ, beginning February 4, 1952, and continuing to date. This action for injunction and other relief was commenced January 28, 1952.

## X

By the terms of the purchase agreement of September 14, 1946, James F. Hopkins, Richard A. Connell, Jr., and Henrietta A. Connell agreed with plaintiff that they would not cause or permit the selling corporation to sell or dispose of any of its property during the period pending FCC approval, except in the ordinary and regular course of its business. At the time the purchase agreement was executed, the program "Jack the Bellboy" was being broadcast over Station WJBK and was a property of the selling corporation. Transfer of the program "Jack the Bellboy" on May 1, 1947, by the selling corporation to the new company being organized by the individual defendants was not in the ordinary course of the seller's business and violated the said purchase agreement.

## XI

Neither prior to nor at the time the purchase agreement was executed was any discussion had between plaintiff and defendants concerning the program "Jack the Bellboy." Inquiry concerning the program and its ownership was first raised by plaintiff's President Storer with the seller's managing officers, James F. Hopkins and Richard A. Connell, Jr., shortly before the sale was consummated on July 9, 1947, after FCC approval had been issued. At this time, defendants Hopkins and Connell stated to Storer that the name was owned by a separate corporation, that it had never been an asset of the selling corporation, and did not pass to plaintiff with the sale. Defendants Hopkins and Connell did not disclose that a transfer of the program and name to a new corporation of the same name had occurred in May, 1947, six months after execution of said purchase agreement. Neither did they then claim or inform Mr. Storer that the name "Jack the Bellboy" was the property of McKenzie. Until January, 1952, Mr. Storer had no knowledge or

reason to suspect that the name had been transferred on May 1, 1947, in violation of the purchase agreement. Accordingly, plaintiff did not waive any right thereto.

## XII

The statements made to Mr. Storer, together with the facts concealed, being material to the question of ownership, were the equivalent of affirmative statements that the program "Jack the Bellboy" had not been owned by the selling corporation on September 14, 1946, and hence was not within the scope of the purchase agreement of that date. The statements constituted, and were intended, as an affirmation by Hopkins and Connell of the seller's full performance under the purchase agreement. This was false. Hopkins and Connell knew that it was false and intended that Storer should reach the conclusion intended and rely in good faith thereon. He did so believe and rely, and it was reasonable under these circumstances that he should do so. Storer continued to recognize Jack the Bellboy, Inc., as the owner of the name "Jack the Bellboy" until the circumstances of McKenzie's resignation from Station WJBK on January 18, 1952 caused Storer to investigate. During such investigation, Storer learned for the first time that the transfer and incorporation had occurred during May, 1947, eight months after execution of the purchase agreement.

## XIII

As of September 14, 1946, the program "Jack the Bellboy" had only nominal value. Beginning in February, 1947, it began to develop increasing acceptance and value. Station revenue for the first six months of 1947 exceeded total income for the preceding year. McKenzie's income in May, 1947, the month in which the name was transferred to Jack the Bellboy, Inc., was three times as large as that earned in February of the same year. By the time of the transfer and incorporation on May 1, 1947, defendants James F. Hopkins, Richard A. Connell and Edmond T. McKenzie knew that the program had achieved very substantial value.

## XIV

The conduct of the individual defendants reveals a deliberate design to deprive plaintiff and its predecessor of beneficial interest in said program and name to which they were entitled. Between consummation of the sale on July 9, 1947, and the time of defendant McKenzie's resignation on January 16, 1952, the payments made by plaintiff and its predecessor to defendant McKenzie were at least in part to compensate for use of the name, which was used continuously during such period in broadcasts over the station which plaintiff and its predecessor had acquired. Since plaintiff notified defendants of its claims to ownership in January, 1952, the defendants have persisted in a denial of plaintiff's right to the named program and have used the same for broadcasts over the competing Detroit station of defendant WXYZ, Inc.

## XV

The conduct of the individual defendants in incorporating Jack the Bellboy, Inc., and executing the abortive transfer to it on May 1, 1947, and their subsequent actions in connection therewith reveal a deliberate design to fraudulently conceal from plaintiff the true situation as to ownership of the named program and the fact that plaintiff had a cause of action for redress. Such conduct did fraudulently conceal plaintiff's cause of action from it until January, 1952, and plaintiff acted immediately thereafter by notice and institution of this action.

## XVI

Under the circumstances here present, the corporate name "Jack the Bellboy, Inc." is likely to mislead the public into believing that such corporation owns the name "Jack the Bellboy" for radio broadcast purposes and the corporate name is so nearly similar to such radio program name as to lead to confusion and deception, within the prohibition of M.S.A. § 21.6, Comp.Laws Mich. 1948, § 450.6. The assumption of such corporate name was a part of the deliberate design to deprive plaintiff and its predecessor of beneficial interest in such program and name.

## XVII

It has been agreed that hearing on plaintiff's claims for compensation and damages arising from the conduct of defendants should await outcome of the determination of ownership of the named program and of plaintiff's claims for injunctive relief.

## Conclusions of Law.

### I

■ Where, as here, there has been a transfer of all assets of a wholly owned subsidiary corporation to its parent, without consideration, with assumption of liabilities of the subsidiary by the parent, followed by dissolution of the subsidiary, there is a merger of the corporations, and, upon such merger, the continuing parent corporation succeeds to the rights of the subsidiary in respect of the property or assets acquired, and may itself sue on claims of the subsidiary which have passed to the parent by reason of the merger. Consequently, this action is vested in plaintiff, as successor to Detroit Broadcasting Corporation, formerly known as James F. Hopkins, Inc. Helvering v. Metropolitan Edison Co., 1938, 306 U.S. 522, 59 S.Ct. 634, Federal Gravel Co. v. Detroit & M. Ry. Co., 1933, 263 Mich. 341, 248 N.W. 831; Fletcher, Cyclopedia Corporations, Vol. 15, Sec. 7177, p. 266.

### II

■ Equitable ownership in the capital stock of James F. Hopkins, Inc., became vested in plaintiff under the purchase agreement on September 14, 1946, pending final consummation of the sale. Richardson v. Blue Grass Mining Co., D.C.1939, 29 F. Supp. 658, affirmed per curiam, 6 Cir., 127 F.2d 291, certiorari denied 317 U.S. 639, 63 S.Ct. 30, 87 L.Ed. 515. Fletcher, Cyclopedia Corporations, Vol. 13, Sec. 5976, p. 349.

### III

■ Where, as here, a radio program, its name and the material and scripts thereof are written and developed by an employee during the course of his employment for his employer radio station, using his employer's radio facilities, without any special agreement as to ownership, ownership vests in and becomes the property of the employer radio station. Consequently, the name and program in question were at all times the property of the selling corporation, James F. Hopkins, Inc., and should have passed to plaintiff and its predecessor upon consummation of the sale on July 9, 1947. Phillips v. W. G. N., Inc., 1940, 307 Ill.App. 1, 29 N.E.2d 849; Brown v. Molle Co., D.C.S.D.N.Y.1937, 20 F.Supp. 135; Uproar Co. v. NBC, 1 Cir., 1936, 81 F.2d 373, certiorari denied 298 U.S. 670, 56 S.Ct. 835, 80 L.Ed. 1393; Sawyer v. Crowell Pub. Co., D.C.S.D.N.Y.1942, 46 F.Supp. 471, affirmed 2 Cir., 1944, 142 F.2d 497, certiorari denied 323 U.S. 735, 65 S.Ct. 74, 89 L.Ed. 589.

### IV

■ Transfer of the name and program to Jack the Bellboy, Inc., on May 1, 1947, was an unlawful conversion of the property of James F. Hopkins, Inc., and is void because a transferor of personal property can convey not greater title than it possesses. Veeser v. Robinson Hotel Co., 1936, 275 Mich. 133, 266 N.W. 54; Old Mortgage & Finance Co. v. Pasadena Land Co., 1928, 241 Mich. 426, 216 N.W. 922; Tuttle v. Campbell, 1889, 74 Mich. 652, 42 N.W. 384; Nichols v. Monjeau, 1903, 132 Mich. 582, 94 N.W. 6; 46 Am.Juris. 620 and 629, Secs. 458 and 464.

### V

The action of James F. Hopkins and Richard A. Connell in transferring the name and program on May 1, 1947, was a breach of their fiduciary duties as officers and directors of James F. Hopkins, Inc., and they, and all parties in privity, must reconvey the name to plaintiff, as successor to James F. Hopkins, Inc. M.S.A. § 21.47, Comp.Laws Mich.1948, § 450.47. Richardson v. Blue Grass Mining Co., D.C. 1939, 29 F.Supp. 658, affirmed, per curiam, 6 Cir., 127 F.2d 291, certiorari denied 317 U.S. 639, 63 S.Ct. 30, 87 L.Ed. 515; Wardell v. Union Pacific R. Co., 1881, 103 U.S. 651, 26 L.Ed. 509; Young Spring & Wire Corp. v. Falls, 1943, 307 Mich. 69, 11 N.W.2d 329; Luyckx v. R. L. Aylward Coal Co., 1935, 270 Mich. 468, 259 N.W. 135.

### VI

The action of James F. Hopkins and Richard A. Connell, Jr., in executing in the

name of James F. Hopkins, Inc., a transfer of the name and program on May 1, 1947, was contrary to and violated the provisions of the purchase agreement of September 14, 1946, because the program and its name constituted property being sold within the meaning of such agreement. Phillips **v.** W. G. N., Inc., supra.

### VII

■ Statements made to plaintiff's President by defendants James F. Hopkins and Richard A. Connell, Jr., concerning ownership of the program and name, and the concealment of facts material thereto, with intent that plaintiff's President should believe that the named program had not been property of James F. Hopkins, Inc., at the time of the purchase agreement of September 14, 1946, and, hence were not within the scope of such agreement, violated a legal duty owing to plaintiff, and were fraudulent and unlawful, because partial statements which are designed to deceive, and concealment of facts so as to make the statements misleading, are fraudulent in law. Groening v. Opsata, 1947, 323 Mich. 73, 34 N.W.2d 560; Sullivan v. Ulrich, 1949, 326 Mich. 218, 40 N.W.2d 126; Richardson v. Blue Grass Mining Co., supra.

### VIII

■ Where, as here, because of actions of the individual defendants, plaintiff and its predecessor were unaware that the purchase agreement was not being fully performed by defendants, there was no waiver of part performance as to the program and name in question, which was a substantial part of necessary performance. Bennecke v. Connecticut Mut. Life Ins. Co., 1882, 105 U.S. 356, 26 L.Ed. 990.

### IX

■ Action to hold directors liable for delinquency in connection with their dealings with corporate property, such as the unauthorized transfer of the program and name on May 1, 1947, which plaintiff discovered and started this action upon in January, 1952, is timely, as brought within six years from the date of such delinquency or within two years from the time when such delinquency is discovered by one complaining thereof, whichever sooner occurred. M.S.A. § 21.47.

### X

■ Where, as here, a cause of action has been fraudulently concealed from the knowledge of plaintiff and its predecessors by the persons liable to such action, and action is instituted within a few days after discovery thereof, the action is timely within M.S.A. § 27.612, Comp.Laws Mich.1948, § 609.20, which provides a limitation of two years after such discovery.

### XI

■ Broadcast of the program "Jack the Bellboy" under that name over the facilities of defendant Station WXYZ, after notice of plaintiff's claim of ownership thereto, is an act of unlawful trade practice. Lone Ranger Inc., v. Cox, 4 Cir., 1942, 124 F.2d 650; Coca-Cola Co. v. Christopher, D.C.E. D.Mich.1941, 37 F.Supp. 216; Finney's Orchestra v. Finney's Famous Orchestra, 1910, 161 Mich. 289, 126 N.W. 198, 28 L.R. A., N.S., 458.

### XII

Where, as here, plaintiff is the lawful owner of the program "Jack the Bellboy," its name and the right to exclusive use thereof within the broadcasting vicinity of Detroit, Michigan, the defendants must assign and transfer to plaintiff any and all apparent interest they possess or claim in the same. Richardson v. Blue Grass Mining Co., supra.

### XIII

■ All defendants, their agents, servants and employees, will be permanently enjoined from using the name "Jack the Bellboy" for any purpose within the broadcasting vicinity of Detroit, Michigan, and the defendants having a connection with the corporate existence of Jack the Bellboy, Inc., will be required to take the necessary action to change the corporate name to some name dissimilar to the name in question.

### XIV

The parties are directed to appear before this court on Monday, September 8, 1952, at 2 p. m., to submit an interlocutory judgment providing for the mandatory and pro-

hibitive injunctions above specified, together with provision for a separate hearing to determine plaintiff's compensation and damages resulting from the actions of defendants.

Supplementary Conclusion of Law.

It Is Hereby Ordered that the following paragraph is added to the conclusions of law filed herein on August 28, 1952, viz.:

XV

■ Richard A. Connell, Jr., having been jointly obligated with James F. Hopkins and Henrietta Connell, under the purchase agreement dated September 14, 1946, with plaintiff, and this court having jurisdiction over the subject matter and person of James F. Hopkins, the judgment ordered shall also be against Richard A. Connell, Jr., as well as the other named defendants. M. S.A. § 27.1439, Comp.Laws Mich.1948, § 622.8.