**Skip NELSON, Plaintiff,**

v.

**RADIO CORPORATION OF AMER-
ICA, Defendant.**

Civ. No. 6985–M.

United States District Court
S. D. Florida
Miami Division.

Feb. 7, 1957.

Hal H. McCaghren, West Palm Beach, Fla., Allen Clements, Jr., Miami, Fla., for plaintiff.

David Mackay, New York City; Charles B. Breslow and Gerald Forman, Miami, Fla., for defendant.

WYCHE, District Judge (sitting by Designation).

Plaintiff was engaged by the late Glenn Miller to perform as a male vocalist with the well-known Glenn Miller Orchestra and rendered such service from July 13, 1942, to the date the orchestra was disbanded on September 27, 1942, when Miller entered the military service. He was paid weekly by Miller, his compensation being computed at "union scale" for whatever he did. Such a scale existed for, among other things, recordings for phonograph records and radio broadcasts. Each week the employee's share of Social Security tax was deducted by Miller and at the end of the year plaintiff received from the Miller office a Department of Internal Revenue form No. 1099 showing the gross amount paid to him by Miller during the year 1942.

In July, 1942, plaintiff sang six selections with the Miller Orchestra for the making of phonograph records. This was done at the defendant's recording studio in Chicago, Illinois, and plaintiff was paid therefor by Miller.

Later, and before the orchestra disbanded on September 27, 1942, plaintiff sang two selections with the Miller orchestra for certain radio broadcasts, and he was paid therefor by Miller. Miller caused these radio broadcasts to be permanently recorded and filed.

Plaintiff had no ownership or interest in the copyrights of any of the selections sung by him.

By agreement between Miller and the defendant all rights of Miller in the phonograph records produced as afore-, said were duly assigned by Miller to the defendant and the records were released in form to be played at a speed of 78 rpm.

After the Miller orchestra disbanded two of the selections ("Moonlight Becomes You" and "That Old Black Magic") were reissued by defendant on phonograph records playing at 45 and 33–⅓ rpm. This was done without consulting plaintiff.

After Miller's death his estate by agreement with defendant authorized defendant to utilize for phonograph record purposes certain of the Miller recordings made from radio broadcasts, including the selections "My Devotion" and "I Don't Want To Walk Without You", the vocal refrain of which selections had been sung by plaintiff. This was done without consulting plaintiff.

"My Devotion" was released by defendant in a large album of phonograph records containing approximately 60 selections and entitled "Glenn Miller Limited Edition". The label on the record containing among others "My Devotion" did not indicate that plaintiff had sung the vocal refrain.

"I Don't Want To Walk Without You" was released by defendant in another large album of phonograph records also containing approximately 60 selections and entitled "Glenn Miller Limited Edition—Volume II". In this instance however, not only did the label on the record containing the selection "I Don't Want To Walk Without You" fail to indicate that the vocal refrain had been sung by plaintiff but, through a clerical error, the singing was attributed to one Ray Eberle who had been plaintiff's predecessor with the Miller orchestra.

On motion of the defendant at pretrial conference, plaintiff's demand that defendant be required by the Court to issue and publicize an album of phonograph records containing only selections sung by plaintiff and pay plaintiff royalties thereon was stricken from the complaint, but plaintiff still seeks to obtain from defendant an accounting for the

sale of the 45 and 33-⅓rpm. phonograph records of the selections "Moonlight Becomes You" and "That Old Black Magic", as well as for the sale of the two Glenn Miller albums, the first of which included the selection "My Devotion" and the second of which included the selection "I Don't Want To Walk Without You". In addition to the accounting, plaintiff seeks a 5% royalty on the records sold by defendant, an injunction against future sales without his consent, and damages.

The testimony at the trial established that plaintiff had no agreement with Miller that phonograph records recorded by plaintiff with the Miller orchestra were to be playable at any particular speed, that there was no agreement between plaintiff and Miller or between plaintiff and defendant that label credit or other advertising credit would be given to plaintiff in connection with selections sung by him with the Miller orchestra, and that there never was an agreement between plaintiff and Miller entitling plaintiff to receive any royalty on the sale of phonograph records.

The testimony also established that in addition to singing with the Miller orchestra for the making of phonograph records and radio broadcasts, plaintiff had also over a period of years rendered the same type of service for the Chico Marx Orchestra, the Guy Lombardo Orchestra and the Glen Gray Orchestra, and that for each of these orchestras he was paid union scale for his services and never had a royalty agreement. However, plaintiff testified that at one time he had a royalty arrangement with a record company that shortly thereafter went into bankruptcy.

In his testimony and with even greater particularity in his deposition offered in evidence by defendant, plaintiff established that through the years he had been working in different establishments variously described by him as "Supper Clubs" and "high class beer parlors". In these establishments he played piano behind the bar and sang, thereby earning a modest income. He testified that he had made no phonograph records for anyone since the year 1945.

Plaintiff's witness Thorne, an employee of a local office engaged in the business of talent booking, testified that in his opinion singing for phonograph records is of great value to the career of a vocalist and that it is desirable for the vocalist to have his name on the label of phonograph records in connection with the production of which his services are utilized. Although the witness Thorne attached considerable importance to this, so far as concerns his testimony with respect to plaintiff, it was entirely speculative and cannot form the basis for the assessment of damages.

It is my opinion that a master and servant relationship existed between Miller and plaintiff and that in accordance with such cases as Solomons v. United States, 137 U.S. 342, 346, 11 S. Ct. 88, 34 L.Ed. 667, Dielman v. White, C.C., 102 F. 892, Grant v. Kellogg Co., D.C., 58 F.Supp. 48, 54, affirmed 2 Cir., 154 F.2d 59, Brown v. Molle Co., D.C., 20 F.Supp. 135, 136, Sawyer v. Crowell Pub. Co., 46 F.Supp. 471, affirmed 142 F.2d 497, certiorari denied 323 U.S. 735, 65 S.Ct. 74, 89 L.Ed. 589, and Storer Broadcasting Co. v. Jack the Bellboy, Inc., D.C., 107 F.Supp. 988, 993, any rights in and to phonograph records or other recordings in connection with the production of which plaintiff worked were the property of plaintiff's employer Miller, and that all of Miller's rights therein had been by contract duly assigned to defendant. Defendant, therefore, had full right to release phonograph records embodying plaintiff's performances playable at any speed whatever and without giving plaintiff label or advertising credit therefor. However, the defendant concedes that with respect to the selections "My Devotion" and "I Don't Want To Walk Without You", originally sung by plaintiff for Miller for radio broadcast purposes, plaintiff should be paid the present reasonable value his services would have had if the additional use of said selections for phonograph record purposes had been contemplated at the

time his services were actually rendered. Defendant contends that this should be union scale, which defendant established is presently $50 per selection, or a total of $100, and which amount defendant showed had been tendered by it to plaintiff prior to suit and refused.

With respect to the label on the record embodying among others the selection "I Don't Want To Walk Without You" which attributed plaintiff's singing to Eberle, defendant established that the error was not wilful but arose from an unintentional clerical error. Defendant claimed that the error was *damnum absque injuria* and showed that prior to suit it had communicated with plaintiff and had promised to correct the error on any repressing of the record.

Plaintiff urged that such cases as Waring v. Dunlea, D.C., 26 F.Supp. 338, and RCA Mfg. Co., Inc., v. Whiteman, 2 Cir., 114 F.2d 86, establish that he has a common law property right in his renditions of musical selections and that this right is sufficient to entitle him to enjoin the unauthorized sale of these phonograph records and to require an accounting for sales and payment to him of royalties and damages because of records already sold. However examination of these cases shows that in each instance such right as was declared to exist inhered in the leader as proprietor of the orchestra, rather than in the various employees of the orchestra. In any event, plaintiff's authorities are not controlling because they all deal with piratical uses, whereas, as pointed out above, all rights in the phonograph records here involved belonged to plaintiff's employer Glenn Miller, and were acquired by defendant from Miller.

It is, therefore, my opinion that plaintiff's complaint in so far as it seeks an accounting, royalties and an injunction against further sale of phonograph records by the defendant should be dismissed with prejudice, and

It is so ordered.

■ However, it is ordered that judgment be entered in favor of plaintiff and against defendant for damages in the sum of $100.

In addition, plaintiff may, if he wishes, submit an order requiring that on any repressing by defendant of the phonograph record embodying the selection "I Don't Want To Walk Without You" the label thereof be corrected so as to omit therefrom the name of Ray Eberle as vocalist.

Defendant is ordered to pay court costs of this action and except for such court costs each party shall bear his own costs of the action.