## CIRCUIT COURT OF THE CITY OF RICHMOND

Alexander Hamway et al.

v.

Libbie Rehabilitation Center, Inc., et al.

November 18, 1987

Case No. G-5377-1

By JUDGE MELVIN R. HUGHES, JR.

Plaintiffs, all minority shareholders of Libbie Rehabilitation Center, Inc. (Libbie) filed a Bill of Complaint seeking to liquidate Libbie and seeking money damages against the named defendants majority shareholders who are the officers and the directors of the corporation.

Having been filed in 1980 and set for trial in 1982, the case was to be dismissed after the parties arrived at a tentative settlement in the latter year only to be revived in 1983 when the settlement was not consummated. After some pre-trial motions, the trial began on November 18, 1985, was continued after six days of testimony until January 6, 1986, where upon 14 additional days of evidence was taken until February 7, 1986, when the taking of testimony and evidence was concluded. The parties submitted findings of fact and conclusions of law as of May, 1986, and the case has since been under advisement.

The parties' disputes over their rights and interests

in Libbie has an even longer history still, as given in the parties' post trial briefs and submissions.

### The Parties and Their Interests

Libbie was incorporated in Virginia on October 10, 1967. It operates Libbie Convalescent Center (Libbie Convalescent) and two wholly owned subsidiaries, Phoenix Associates, Inc. (Phoenix) and Brent-Lox Nursing Home, Inc. (Brent-Lox). Libbie provides intermediate and skilled nursing home care and a home for adults. The following identifies the parties and their interests in Libbie as provided in Defendants' Proposed Findings of Facts, 1 and 3-12.

1. The plaintiffs, Alexander Hamway, Leroy Steiner, and Louis Adelman, are shareholders in Libbie. Mr. Hamway was a director of Libbie from December 1, 1969, until June 2, 1975, and Vice President of Libbie from December 8, 1971, until June 2, 1975. Mr. Steiner was a director of Libbie from January 14, 1968, until June 1, 1975. Mr. Adelman was a director of Libbie from January 14, 1968, until June 2, 1975, and President of Libbie from October 10, 1968, until January 31, 1970, from March 4, 1970, until August 4, 1970, and from December 8, 1971, until June 2, 1975.

3. The individual defendants are either the present officers and directors of Libbie and of its subsidiaries Phoenix and Brent-Lox, or the executrix of the estates of former officers and directors of Libbie and its subsidiaries.

4. Henry C. Miller, a former officer and director of Libbie and its subsidiaries, died on or about November 20, 1984.

5. Ernest Dervishian, a former officer and director of Libbie and its subsidiaries, died on or about May 20, 1984.

6. The following are owners of common stock in Libbie as of the time of the trial:

| | |
|---|---|
| Louis Adelman | 60,000(a) |
| Conotti Corp. | 68,187 |
| Estate of Ernest Dervishian | 12,287 |
| F & L Associates, Inc. | 35,519 |

| | |
|---|---|
| Alexander Hamway | 5,500(a) |
| Lakeside Pharmacy, Inc. | 8,000 |
| Leroy and Roberta Steiner | 8,000 |
| Leroy Steiner | 1,000 |
| Lewis T. Cowardin | 787 |
| Frank R. Giannotti | 787 |
| Alex Grossman | 787 |

(a) 2,000 shares held by Alexander Hamway have been sold to Louis Adelman but have not been presented to Libbie for transfer on the Stock Transfer Ledger.

7. The following are owners of preferred stock of Libbie as of the trial date:

| | |
|---|---|
| Lewis T. Cowardin | 125 |
| Anne Dervishian | 125 |
| Estate of Ernest Dervishian | 125 |
| Frank R. Giannotti | 125 |
| Lakeside Pharmacy, Inc. | 250 |
| Leroy Steiner | 125 |
| Roberta Steiner | 125 |

8. Conotti Corp., a holder of common stock in Libbie, is a Virginia corporation. Fifty percent of the stock of Conotti Corp. is owned by Frank Giannotti, and fifty percent of the stock of Conotti Corp. is owned by Lewis Cowardin.

9. F & L Associates, a holder of common stock in Libbie, is a Virginia corporation. The stock of F & L Associates, Inc., is owned as follows: 1/6 by Lewis Cowardin, 1/6 by the Estate of Ernest Dervishian, 1/6 by Frank Giannotti, 1/6 by Alex Grossman, and 1/3 by Conotti Corp.

10. Lakeside Pharmacy, Inc., a holder of common and preferred stock in Libbie, is a Virginia corporation. The stock of Lakeside Pharmacy, Inc., is owned as follows:

| | |
|---|---|
| Gerald Grossman | 50% |
| Gilbert Grossman | 25% |
| Gerald Grossman, Custodian for Richard K. Grossman | 25% |

11. At the present time, there are 209,054 shares of common stock issued and outstanding with 8,200 shares of common stock being held in the treasury.

12. The plaintiffs, as a group, own 37.09 percent of the 200,854 shares of common stock held by shareholders. The individual defendants, as a group, have direct or indirect interest in the ownership of 58.93 percent of the 200,854 shares of common stock held by shareholders.

## Statement of the Case

Plaintiffs' claims for relief are based in part in § 13.1-747 and § 13.1-748, Code of Virginia of 1950, as amended.

Plaintiffs' claims as filed in September, 1980, are based on § 13.1-94, now repealed. The Court accepts defendants' Conclusion of Law # 1, the new Virginia Stock Corporation Act repealed § 13.1-94 and according to Chapter 522 of the 1985 Acts of Assembly, § 13.1-94 continues as the governing statute in these proceedings.

Plaintiffs, who in the beginning, were in control of the corporation, found themselves in the minority when the defendants took control in June, 1975. At that time defendants named themselves as the five officers of the corporation and reduced to that number the positions available for directorship of the corporation, Plaintiffs' Finding # 226. The Court also finds, consistent with Plaintiffs' Finding # 21, that upon their takeover the defendants voted salaries for themselves when none had previously been allowed to officers and that in 1975 payments to defendants of bonuses, salaries, and directors' fees totaled $33,027.00 for three months.

The change in corporate control was brought about by the expiration of a voting trust of which plaintiff Louis Adelman was trustee. Earlier, plaintiffs in their then majority position had authorized the issuance of 80,000 shares which, if allowed, would have continued their control of the corporation. This was disallowed by court action and affirmed on appeal in April, 1975 in *Adelman v. Conotti Corp.*, 215 Va. 782 (1975). The Court accepts Defendants' Proposed Findings of Facts # 9-21 and Defendants' Proposed Findings of Facts # 21, 22,

and 13-16 regarding history of operations and organization of the corporation prior to June, 1975.

After a period of construction of an addition to Libbie Convalescent from 1973 to 1975, the corporation constructed a nursing home facility in Tappahannock, Virginia, through a wholly-owned subsidiary Phoenix Associates beginning in late 1975 to 1977. An addition to this facility was constructed in 1978, Defendants' Proposed Finding # 23-24. In April, 1974, Libbie acquired the stock of Brent-Lox which became another wholly-owned subsidiary, Defendants' Proposed Finding # 25. With the construction of an addition to Tappahannock in 1978 and the acquisition of Brent-Lox in 1979, Libbie presently maintains 443 beds and employs 301 people in three facilities, Defendants' Proposed Findings # 25 and 26.

The gravamen of plaintiffs claim is oppressive conduct by the defendants' majority shareholders, officers, and directors. As evidence of oppressive behavior, plaintiffs argue the evidence reveals excessive compensation paid to the defendants as officers, inadequate dividends paid to shareholders, and improper transactions between the defendants and the corporation and others in which defendants had personal interests, to the detriment of the well being of the corporation.

The defendants argue in their defense that the statutes authorize only relief by way of liquidation of the corporation or the appointment of a custodian or receiver to run the corporation, not by money damages, and that, moreover, laches and the business judgment rule bar any right of recovery by the plaintiffs.

*Statement of Issues and Positions of the Parties*

*The Business Judgment Rule*

Defendants assert that all their dealings with the corporation questioned by the plaintiffs fall within the business judgment rule which in effect renders as immune such actions taken by them from interference by the court.

## Officers Compensation

Plaintiffs assert that the defendant officers' salaries are excessive, as set by themselves as majority shareholders and directors, and constitute waste of corporate resources denying to plaintiffs adequate dividends. Defendants deny that their compensation is excessive and wastes corporate assets.

## Dividends

Plaintiffs assert the profits of the corporation as against the salaries of the defendant officers reveal that the dividends declared during the time the defendants had controlled the corporation constitute inadequate return on their investment. Defendants state that adequate dividends have been declared during their time, under the circumstances, and that during a time plaintiffs were in control, no dividends were asked.

## Third Party Transactions

Plaintiffs allege defendants, having the controlling interest, by their acts as officers and directors of the corporation, have permitted the corporation to transact business with other business entities with which they are closely related to or control and thereby have breached their fiduciary duties to the corporation's shareholders.

Defendants deny they have breached their fiduciary responsibilities and state that the transactions with these other business entities have been fair and of benefit to the corporation.

## Laches

Defendants assert that plaintiffs have been aware since 1975 of all the bases they contend for relief when defendants took control of the corporation and that by their delay have been prejudiced in defending plaintiffs' claims.

Plaintiffs deny they could have known of defendants' oppressive behavior before they filed suit in 1980.

*Remedies*

Defendants contend that, should plaintiffs prevail, the relevant statute limits the remedies available to dissolution and appointment of a custodian. Plaintiffs contend that in addition to liquidation and custodianship, they are also entitled to money damages by way of requiring defendants to reimburse the corporation.

## Discussion

*The Business Judgment Rule*

While recognizing the right of a court in equity, upon suit filed by shareholders, to liquidate a corporation, the courts have historically done so reluctantly and with great circumspection. As the Supreme court of Virginia explained in *Brennan v. Rollman*, 151 Va. 715 (1928) at page 731:

> The power of courts of equity to take possession of, and liquidate a functioning solvent corporation at the instance of minority stockholders, is recognized in many jurisdictions, including Virginia.
> But while the. . . authorities establish the power of the courts to dissolve corporations, *it is concededly a power that can be easily abused, and one that should be cautiously exercised.* If the purposes for which the company was formed have become impossible of attainment, and to continue the business would be manifestly ruinous to its shareholders, equity may interpose but not otherwise. (Emphasis is original.)

More recent decisions and especially the case of *White v. Perkins*, 213 Va. 129 (1972), a case on which both sides rely and cite in support of their respective positions, seem to announce a more liberal, if not favorable, consideration. In *White* the Court ordered a dissolution of a corporation upon finding that the owner of 55% of the corporation's shares was oppressing the minority shareholder who owned the remaining 45% of the shares.

In defining the word "oppressive," the operative word for plaintiffs' claims here, the court observed at page 134:

> Oppression as a ground for corporate dissolution would appear to be of a fairly recent origin. The statutory recognition of this ground first occurred in Illinois in 1933. *Central Life Ins. Co. v. Davis*, 10 Ill. 2d 566, 572, 141 N.E.2d 45, 49 (1957). By 1965 at least eleven other states, including Virginia, had adopted similar statutes. See 1965 Duke L.J. 128.
>
> The word "oppressive" as used in the statute does not carry an essential inference of imminent disaster; it can contemplate a continuing course of conduct. The word does not necessarily savor of fraud, and the absence of "mismanagement or misapplication of assets" does not prevent a finding that the conduct of the dominant directors or officers has been oppressive. It is not synonymous with "illegal" and "fraudulent." *Central Life Ins. Co. v. Davis, supra*; *Gidwitz v. Lansit Corrugated Book Co.*, 200 Ill. 2d 208, 215, 170 N.E.2d 131, 135 (1960).

Defendants asserted at trial that *Brennan v. Rollman* was affirmed by *Penn v. Pemberton & Penn, Inc.*, 189 Va. 649 (1949). Plaintiffs contend that the enactment of Section 13.1-94 subsequent to the decision in *Penn* provides additional grounds for dissolution besides those in place when *Brennan* and *Penn* were decided.

Our Supreme Court citing *White* has stated that Section 13.1-94 is remedial in purpose and should be liberally construed. *Baylor v. Beverly Book Co.*, 216 Va. 22, 24 (1975). It is against this standard then that the question of oppression must be decided as to this case as a whole and as to operation of the business judgment rule. The Court accepts Plaintiffs' Conclusions of Law 1, 2, 3, 4 and Defendants' Conclusion of Law 5.

## Officer Compensation

The cases teach that when considering the question of corporate officer compensation as reasonable or excessive, a range of factors are used and the question is one of fact. *Smith v. Dunlap*, 269 Ala. 97, 111 So. 2d 1 (1959); *Luyckz v. R. L. Aylward Co.*, 270 Mich. 468, 259 N.W. 135 (1935); *Fendelman v. Fenco Hanbay Mfg. Co.*, 482 S.W.2d 461 (1972); *Ruetz v. Topping*, 453 S.W.2d 624 (1970); *Gallin v. National City Bank*, 152 Misc. 679, 273 N.Y. 87 (1934). The facts considered are: nature and extent of services rendered by the officer, financial condition of the corporation, the executives' abilities, difficulties involved, comparison with salaries paid, comparable positions in comparable general economic conditions, and business environment.

The parties presented expert witnesses to establish each of the defendant officers' work as appropriate or excessive. In their proposed findings of fact and conclusions of law, each side attempts to bolster or attack the expert testimony citing the comparability or lack of it in the compensation and the effort or lack of it in the particular work and work patterns of the defendants. In this regard, it is well to point out that "compensation" is meant to include salaries, bonuses, fringe benefits, directors' fees, expense allowances, reimbursements, and other compensation paid to the defendant officers.

## Dividends

Dividends and the decision of directors to control them for the good of the corporation has been, without a doubt, an area in which the courts have deferred to dictates of majority control. *Glass v. Glass*, 228 Va. 39 (1984). The majority have "the right and power by the election of directors and by vote of their stock, to determine the policy of their corporation and to manage and control its action." *Fein v. Lanston Monotype Co.*, 196 Va. 753, 766 (1955).

This right of majority of control should, however, be viewed in the context of the setting of a closely held corporation, such as the subject corporation, operating with directors who are also officers and majority sharehol-

ders who fix their own compensation and size of salaries. While considering the right of majority control, "oppression" as defined (including what is implicit in that definition, fair dealing and fair play) is to be considered. After all, shareholders contribute their resources to the company with the hope of a fair return on this investment when such is reasonably available. Even considering the Court's reluctance to get involved with the complex business considerations directors face in making decisions for the good of the company, the right of all investors to a fair return, to share in the profits of the corporation, should not be completely ignored. When conditions of denial continue over a period of time, the Court's reluctance to get involved is diminished even though there is no threat of corporate demise.

*Transaction with Others*

In *Adelman v. Conotti Corp., supra,* p. 789-790, a case involving this corporation in an earlier intracorporate dispute, the Supreme Court of Virginia stated a presumptive invalidity rule regarding transactions between a corporation and its officers:

> Under Virginia law an officer of a corporation, in his dealings with the corporation, has the same duty of fidelity which arises in dealings between a trustee and a beneficiary of the trust. *Deford v. Ballentine Realty Corp.,* 164 Va. 436, 180 S.E. 164 (1935). Where a trustee deals with the *cestui que trust,* such transactions, while not *ipso facto* voidable, are *prima facie* presumed to be invalid and the fiduciary must bear the burden of proving that the transaction was fairly conducted. *Waddy v. Grimes,* 154 Va. 615, 153, S.E. 807 (1930).
>
> We. . . hold this same fiduciary duty applies to the conduct of the officers and directors of a corporation on their dealings with the corporation's stockholders.

Officer-director transactions with their own corpora-

tion are to be considered in the context of whether the transaction was fair and reasonable to the corporation.

The parties both rely on an earlier case, *Rowland v. Kable*, 174 Va. 343 (1940), which seemed to set the fair and reasonable standard as a bar to voiding such transactions. In *Rowland* at page 367, the Court gave a definitive guide to determining the reasonableness of such transactions:

> The authorities are agreed that a director of a private corporation cannot directly or indirectly, in any transaction in which he is under a duty to guard the interests of the corporation, acquire any personal advantage, or make any profit for himself, and if he does so, he may be compelled to account therefor to the corporation. This does not mean that he may not deal with his corporation or sell his property to the corporation if the transactions are open, fair and honest, and the corporation is represented by competent and authorized agents. The unbending rule is that the director must act in the utmost good faith, and this good faith forbids placing himself in a position where his individual interest clashes with his duty to his corporation. The purpose of the law is to secure fidelity in the director. If, in violation of the general role, he places himself in a position in which he may be tempted, by his own private interest, to disregard the corporation, his transactions are voidable at the option of the corporation and may be set aside without showing actual injury.

Despite the presence of some considerations, the Court finds that the transactions involved in this case are not voidable for the lack of disclosure of personal interests.

*Laches*

Given the history of this case as previously stated herein by the statement of both sides in their briefs, it appears that all parties have been well aware of the activities of each other over the years. While the defendants claim prejudice by stating plaintiff delayed filing their claims in this suit from 1975, the time the defendants took over as majority, to 1980, there is no showing any delay was unreasonable and prejudicial.

There is no evidence to support defendants' claim of prejudice that the deaths of two of the original defendants, Miller and Dervishian, deprived them of anything that would have been relevant to deciding this case. In this connection, defendants have not carried the burden of proof, in their laches defense. In *Morris v. Mosby*, 227 Va. 517 (1984), the Supreme Court repeats the discussion of the issue of laches in *Meredith v. Goodwyn*, 219 Va. 1025 (1979), at 523:

> When a trial court considers the defense of laches, it does not apply an absolute rule such as a statute of limitations, but instead, the court examines each case in light of the particular circumstances. . . [The] claimant's delay must be unreasonable and prejudicial to the other party. . . Further the burden of proving laches is upon the party asserting the defense.

Again, defendants have failed to carry its burden on this defense.

*Remedies Available*

For reasons discussed previously, it is essential that in order to be entitled to any remedy, the plaintiff must establish corporate oppression. The scope of remedy available once this is shown is demonstrated by the language used in § 13.1-94 and by the cases interpreting its provisions, *White v. Perkins*, *supra*.

Accordingly, there is no remedy available to plaintiffs for recovery of damages from the defendants according

to the statute as given by the General Assembly to courts of equity in their jurisdiction. Other statutory provisions for maintaining causes of action against a terminated corporation, such as § 13.1-755, which replaced § 13.1-101, are available to plaintiffs. Section 13.1-755 may give plaintiffs the basis for asserting claims against defendants to repay monies taken from the corporation to which they were not entitled.

### The Court's Findings

The Court adopts plaintiffs' proposed findings of fact and conclusions of law which are not inconsistent with this opinion. The Court is of the opinion that plaintiffs have borne their burden as to the substance of their claims but that the relief is limited to that provided in § 13.1-94, including liquidation and receivership but not damages or any other form of relief sought by them.

The Court finds the testimony of the administrators of each of the three Libbie facilities as most telling regarding the lack of sufficient work and supervision to justify officer salaries, fees, and other benefits. The Court accepts Plaintiffs' Findings # 110, 21-109 and 113.

The Court finds plaintiffs have sufficiently proved matters in connection with related party transactions embodied in their Proposed Findings of Fact # 161-197, except for corporate transactions with Lakeside Pharmacy on pricing of the unit dose system.

While the Court accepts plaintiffs' proposed findings regarding State Department of Health actions on noted deficiencies in licensure and certification surveys, there is no evidence residents at Libbie suffered any injury thereby.

Finally, the court finds that defendants by their actions have been oppressive to the minority plaintiff shareholders in breach of their fiduciary duties in their capacity as majority controllers of the corporation by effectively freezing out plaintiffs from a reasonable opportunity to receive a reasonable return on their investment given the financial condition of the corporation during the period. Thus, the Court accepts Plaintiffs' Proposed Conclusions of Law where pertinent but only

insofar as they find: (1) defendants have violated their fiduciary duties; (2) defendants have not proved payments as reasonable, and (3) a receiver to be appointed will collect assets.